# EXHIBIT D

*Bark v. U.S. Forest Serv*., No. 12-1505-RC,
ECF No. 52 (D.D.C. December 31, 2014)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARK *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | Civil Action No.: 12-1505 (RC) |
| UNITED STATES FOREST SERVICE, : | |
| : | Re Document Nos.: 48 |
| Defendant, : | |
| : | |
| *and* : | |
| : | |
| NATIONAL FOREST RECREATION : | |
| ASSOCIATION *et al.*, : | |
| : | |
| Intervenor–Defendants. : | |

## MEMORANDUM & ORDER

### GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO RETAX COSTS

### I. INTRODUCTION

Bark, an Oregon non-profit organization, joined five individual plaintiffs to initiate litigation against the United States Forest Service under the Administrative Procedure Act. The Court granted summary judgment on all counts for the Forest Service. Pursuant to 28 U.S.C. § 1920(4), the Forest Service then timely sought reimbursement of $3,402 in vendor charges for preparing and duplicating the administrative record. The Clerk taxed costs in this amount against Plaintiffs. *See* Bill of Costs as Taxed, ECF No. 47. Plaintiffs then filed the instant motion to retax costs, asking the Court either to not award any costs or to award costs in the reduced amount of $173.25, calculated by applying a proposed cost of $0.05 per page for the 3,465 pages in the administrative record. Because the Court had no information regarding the

specific tasks performed by the vendor, the Court deferred Plaintiffs' motion and ordered the Forest Service to supplement the record with a more detailed breakdown of the vendor's charges. *See* ECF No. 50. The Forest Service has filed a declaration from the vendor and a detailed invoice describing each of the tasks performed. *See* Harroun Decl., ECF No. 51; Invoice, ECF No. 51-1. Having reviewed the filings, the Court grants in part and denies in part Plaintiffs' motion to retax costs.

## II. STANDARD OF REVIEW

A motion to review the Clerk of the Court's taxation of costs may be brought pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1(e). A court, in reviewing "a motion to retax, for good cause shown may tax additional costs or may deny costs allowed by the Clerk pursuant to [Local Civil Rule 54.1(d)]." LCvR 54.1(e). "Though the allowance, disallowance, or apportionment of costs is in the sound discretion of the district court," *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1107 (D.C. Cir. 1985), a court must begin its inquiry with the presumption that allowable costs should be taxed to the non-prevailing party. *See* Fed. R. Civ. P. 54(d)(1); LCvR 54.1(a); *see also Sun Ship, Inc. v. Lehman*, 655 F.2d 1311, 1312 (D.C. Cir. 1981) ("Fed. R. Civ. P. 54(d) embodies the presumption that prevailing parties will recover their costs as a matter of course." (internal quotation marks omitted)).

The Supreme Court has noted, moreover, that "[b]ecause costs are usually assessed against the losing party, liability for costs is a normal incident of defeat." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). A court therefore "may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so." *See Baez v. U.S. Dep't of Justice*, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc) (per curiam). As a corollary, "[u]nsuccessful parties bear the burden of showing circumstances sufficient to

overcome the presumption in favor of awarding costs to the prevailing party" under Rule 54(d). *Long v. Howard Univ.*, 561 F. Supp. 2d 85, 96 (D.D.C. 2008) (citing *Baez*, 684 F.2d at 1004); *see also Sykes v. Napolitano*, 755 F. Supp. 2d 118, 120 (D.D.C. 2010) (same).

### III.  ANALYSIS

In their motion to retax costs, Plaintiffs make two arguments.  First, they ask the Court to exercise its discretion to not award any costs to the Forest Service because the litigation involved a novel legal issue that was brought in the public interest and because of the economic disparity between them and the Forest Service.  In the alternative, they ask the Court to award costs in the lesser amount of $173.25, based on their proposed $0.05 per page charge.  *See generally* Pls.' Mot. Retax Costs, ECF No. 48.  The Forest Service objects to both arguments and contends that Plaintiffs have failed to meet their burden of overcoming the presumption in favor of taxing costs to the prevailing party.  *See generally* Def.'s Resp. Pls.' Mot. Retax Costs, ECF No. 49.

#### A.  Public Interest

One factor that a district court may consider when taxing costs is whether the "litigation involve[ed] previously undecided issues of public importance."  *Rural Hous. Alliance v. U.S. Dep't of Agric.*, 511 F.2d 1347, 1351 (D.C. Cir. 1974) (Bazelon, J., concurring).  Although this case presented a novel issue implicating the public interest, almost all cases against the federal government implicate the public interest on some level (or could be framed in such a way).  This case was not so important as to overcome the presumption in favor of awarding costs.  *See Long*, 561 F. Supp. 2d at 96; *cf. Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 593 (9th Cir. 2000) ("This is an extraordinary, and extraordinarily important, case.").

### B. Financial Hardship and Disparity

"The financial hardship of the unsuccessful party 'is a factor that a district court may, but need not, consider in its award of costs pursuant to Rule 54(d).'" *Guevara v. Onyewu*, 943 F. Supp. 2d 192, 196 (D.D.C. 2013) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000)) (emphasis omitted). Although Plaintiffs are individuals and a non-profit organization receiving pro bono representation in this case, they have neither shown that they are indigent nor demonstrated resource constraints so severe as to prevent payment of taxed costs. *cf. id.* ("When a district court chooses to consider the unsuccessful party's financial hardship, 'it should require substantial documentation of a true inability to pay.'" (citation omitted)); *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 464 (3d Cir. 2000) ("[I]f a losing party is indigent or unable to pay the full measure of costs, a district court *may*, but need not *automatically*, exempt the losing party from paying costs."). Moreover, nearly all parties will have disparate economics compared to the federal government, and the Court declines to insulate all litigants who lose to the government from the Rule 54(d) cost-shifting presumption.

In sum, Plaintiffs' arguments are not strong enough to overcome the presumption of taxing costs against the losing party. *See Long*, 561 F. Supp. 2d at 96. This conclusion says nothing, however, about whether the costs at issue here are taxable under 28 U.S.C. § 1920(4) as a matter of law. Accordingly, the Court now turns to this question of statutory interpretation.

### C. Costs of "Making Copies" Taxable Under 28 U.S.C. § 1920(4)

28 U.S.C. § 1920 sets forth specific categories of costs taxable in the federal courts. Among the costs that a prevailing party may recover are "costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4).[1]

---

[1] Plaintiffs do not dispute that the Forest Service was the prevailing party or that copies of

The Third Circuit construed this provision narrowly in *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012). In that case, the court considered whether various discovery vendor charges incurred in managing electronically stored information ("ESI") were taxable as the "costs of making copies" under § 1920(4). The court noted that by this statute, "Congress meant to impose rigid controls on cost-shifting in federal courts" and to reject more flexible equitable authority for taxing costs. *Id.* at 164 (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987)). After considering the dictionary definition of the word "copy," the court held that the district court did not abuse its discretion by including only "all scanning and TIFF conversion costs" and excluding other charges for "collecting and preserving ESI," "processing and indexing ESI," and performing keyword searches. *Id.* at 167 (affirming district court's taxation and listing cost categories).[2] The court then explained that § 1920(4) "does not state that all steps that lead up to the production of copies of materials are taxable" or allow taxation "merely because today's technology requires technical expertise" or because certain "activities [can] encourage cost savings." *Id.* at 169. Rather, § 1920(4) "authorizes awarding only the cost of *making copies*." *Id.* (emphasis added).

Subsequently, in *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997 (2012), the Supreme Court considered another provision in § 1920 that allowed the taxing of "compensation

---

the administrative records were "necessarily obtained for use in" the litigation. 28 U.S.C. § 1920(4). The Forest Service, for its part, does not contend that the costs at issue are "[f]ees for exemplification," which are also taxable under 28 U.S.C. § 1920(4). *See Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 262 (2013) (reviewing cases and explaining that courts have interpreted "exemplification" to include "authentication of public records," "exhibits," and "demonstrative aids").

[2] The court also allowed taxation of the costs of transferring recordings from VHS to DVD format. *Race Tires Am.*, 674 F.3d at 167. That portion of the court's holding is less relevant to this case, which concerns only the copying of documents.

of interpreters," 28 U.S.C. § 1920(6).  Relying on the ordinary and technical meanings of the term "interpreter" and the legislative history, the Court held that "compensation of interpreters" in § 1920(6) is limited to "the cost of oral translation and does not include the cost of document translation."  *Taniguchi*, 132 S. Ct. at 2000.  Explaining its holding, the Court rejected the notion that Rule 54(d)'s presumption of awarding costs to the prevailing party should relax the Court's interpretative approach: "[W]e have never held that Rule 54(d) creates a presumption of statutory construction in favor of the broadest possible reading of the costs enumerated in § 1920."  *Id.* at 2006.  The Court further emphasized that "[t]axable costs are limited to relatively minor, incidental expenses," *id.*, and are "almost always amount to less than the successful litigant's total expenses," *id.* (quoting 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2666, p. 203 (3d ed. 1998)).

The Fourth Circuit then relied on both *Race Tires America* and *Taniguchi* in construing "making copies" in § 1920(4) to exclude certain ESI-related costs.  In *Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*, the Fourth Circuit affirmed taxation of costs for "only the conversion of native files to TIFF and PDF formats, and the transfer of files onto CDs . . . ." 718 F.3d 249, 261 (4th Cir. 2013).  Among those costs deemed non-taxable were those associated with "quality assurance procedures," "analyzing corrupt documents and other errors," and "preparing the production of documents to opposing counsel."  *Id.* at 253.

Applying the above principles, the Court considers whether each of the seven discrete tasks detailed in the Forest Service's declaration constitutes "making copies" under 28 U.S.C. § 1920(4).  *See* Harroun Decl. ¶ 2.  The first task is the conversion of record materials into PDF files, described in the declaration as

> converting 3,465 pages of paper and electronic files in the
> administrative records to PDF word searchable format (via OCR

    scanning), including removing staples, paper clips, and sticky
    notes, at a charge of $0.65 per page x 3,465 = $2,242[.]

Harroun Decl. ¶ 2.[3]  Many federal courts have held that the scope of "making copies" under § 1920(4) encompasses tasks such as "conversion of native files to . . . PDF formats," *Country Vintner of N.C.*, 718 F.3d at 261, "scanning . . . documents to create digital duplicates," *Race Tires Am.*, 674 F.3d at 167, and "converting computer data into a readable format," *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009).  Indeed, Plaintiffs do not dispute that costs of "the scanning and electronic conversion of documents" would be compensable.  Pls.' Mot. Retax Costs 6 (quoting *Race Tires Am.*, 674 F.3d at 167–69) (alterations and internal quotations marks omitted).

  However, the Court concludes that the tasks of "removing staples, paper clips, and sticky notes" cannot be considered "making copies" under § 1920(4).  *See Country Vintner of N.C.*, 718 F.3d at 253 (identifying "preparing" documents as non-taxable); *Race Tires Am.*, 674 F.3d at 167 (identifying "collecting" ESI as non-taxable); *id.* at 169 ("None of the steps that preceded the actual act of making copies in the pre-digital era would have been considered taxable.").  The fact that the Forest Service's vendor charged an aggregated per-page scanning fee that includes these additional document preparation services does not enable this Court to depart from the text of § 1920(4).  Although the declaration and invoice are silent as to what portion of the $0.65 per page charge is allocable to the actual conversion to PDF format, as opposed to document preparation, the Court concludes that $0.15 per page would be a reasonable rate.  *See Salazar v. District of Columbia*, No. CV 93-452(GK), 2014 WL 1118352, at *14 (D.D.C. Mar. 21, 2014) (affirming prior finding that $0.15 per page was "appropriate" for scanning).  Accordingly,

---

  [3] The Court notes that for the first two tasks, the calculations given in the declaration do not yield the total per-task cost therein.

Plaintiffs shall be taxed for the cost of converting record materials into PDF format in the amount of $519.75 ($0.15 per page x 3,465 pages), which excludes charges associated with "removing staples, paper clips, and sticky notes" and any other preparatory, pre-copying services.

The second task enumerated in the declaration is "electronically Bates numbering 3,465 pages in the administrative records, at a charge of $0.08 per page x 3,465 = $290[.]" Harroun Decl. ¶ 2. Notwithstanding any "cost savings" or convenience enabled by Bates numbering, this Court may not stretch the meaning of "making copies" beyond what the text will bear. *Race Tires Am.*, 674 F.3d at 169; *see also Fairley v. Andrews*, No. 03 C 5207, 2008 WL 961592, at *10 (N.D. Ill. Apr. 8, 2008) (holding that Bates numbers are "associated with the parties' convenience," not with the actual act of making copies). Furthermore, the principle that Bates numbering is not taxable is unaffected by the fact that in this type of record-review case, such numbering primarily benefits the Court, rather than the parties. Although the utility of Bates numbers might vary in nature or degree from case to case, adding such numbers simply does not constitute "making copies" under § 1920(4).[4] *See In re Aspartame Antitrust Litig.*, 817 F. Supp. 2d 608, 618 (E.D. Pa. 2011) (explaining that "majority of courts" exclude Bates numbering charges from taxable costs).[5]

---

[4] This Court's Scheduling Order directing the Forest Service to file the administrative record in PDF format did not require the addition of Bates numbers. *See* Scheduling Order, ECF No. 11. And even if the Order had done so, the Court would still lack statutory authority to tax such costs. *Cf. Van Voorhis v. Hillsborough Bd. of Cnty. Comm'rs*, No. 8:06–cv–1171–T–TBM, 2008 WL 2790244, at *4 (M.D. Fla. July 18, 2008) ("Despite the fact that mediation is often court ordered, § 1920 does not contemplate the costs of mediation. Of the circuits that have squarely addressed whether mediation costs may be taxable under § 1920, all have held that they are not." (citations omitted)).

[5] The question of whether adding Bates numbers constitutes "making copies" under § 1920(4) has divided district courts. Many have held that Bates numbers are not part of "making copies." *See, e.g.*, *Durden v. Citicorp Trust Bank, FSB*, No. 3:07-CV-974-J-34JRK,

The vendor's third task was "ensuring all 3,465 pages were legible, at a charge of $0.10 per page x 3,465 = $346[.]" Harroun Decl. ¶ 2. The Court concludes that checking for legibility, like other "quality assurance procedures," is not part of "making copies" under § 1920(4). *Country Vintner of N.C.*, 718 F.3d at 253; *see also In re Text Messaging Antitrust Litig.*, No. 08 C 7082, 2014 WL 4343286, at *3 (N.D. Ill. Sept. 2, 2014) (holding that to "quality check production documents" is not part of "making copies"). *But see Moore v. Weinstein Co., LLC*, No. 3:09-CV-00166, 2014 WL 4206205, at *8 (M.D. Tenn. Aug. 25, 2014) (suggesting that "quality control check" is "necessary to making copies").

The fourth and fifth tasks listed in the declaration both deal with the creation of an index for the administrative record.[6] Creating this index involved

> (4) including all the document numbers in the index for the administrative record, consisting of 118 line items, at a charge of 0.5 hours x $60 per hour = $30; [and]
> (5) inserting Bates numbers corresponding to each document listed [in the index[7]] in the administrative record, at a charge of $55 per hour x 0.25 hours = $14[.]

2010 WL 2105921, at *4 (M.D. Fla. Apr. 26, 2010) (finding cost of Bates numbering to be "extraneous," and "beyond the scope of copying," or alternatively "born primarily of convenience, and not necessity"). By contrast, other courts have concluded that because adding Bates numbers is an "ancillary tas[k] . . . common to electronic or paper discovery," the cost of this work is taxable. *Plantronics, Inc. v. Aliph, Inc.*, No. C-09-01714, 2012 WL 6761576, at *12 (N.D. Cal. Oct. 23, 2012); *see also Canal Barge Co. v. Commonwealth Edison Co.*, No. 98 C 0509, 2003 WL 1908032, at *5 (N.D. Ill. Apr. 18, 2003) ("The Court finds that § 1920(4) should be construed to permit reimbursement of reasonable and necessary bates stamping costs as part of the copying process."); *Envirocorp Well Servs., Inc. v. Camp Dresses & McKee, Inc.*, No. IP99–1575–C–T/G, 2001 WL 1112114, at *3 (S.D. Ind. Aug. 6, 2001) ("This court finds that Bates labeling documents is reasonably necessary to the ordered production and use of those documents in litigation, such that those costs are recoverable under 28 U.S.C. § 1920(4)." (citation omitted)).

---

[6] The Forest Service filed this index with the Court in February 2013. *See* ECF No. 26-2.

[7] The Court notes a discrepancy between the declaration and invoice as to the fifth task. The invoice describes the task as "Inserting Bates numbers corresponding to each document listed *in the index* for the administrative record." Invoice, ECF No. 51-1 (emphasis added). By contrast, the declaration omits the phrase "in the index," stating that the fifth task was "inserting Bates numbers corresponding to each document listed in the administrative record." Harroun

Harroun Decl. ¶ 2. Again construing "making copies" narrowly, the Court concludes that production of an index for improving organization or access to the copied materials is not itself the act of "making copies." *See Race Tires Am.*, 674 F.3d at 167 (identifying "processing and *indexing* ESI" as nontaxable cost (emphasis added)); *cf. Hartford Fin. Servs. Grp., Inc. v. Cleveland Pub. Library*, No. 1:99CV1701, 2007 WL 963320, at *5 (N.D. Ohio Mar. 28, 2007) (holding that "key word indices" accompanying deposition transcripts are not taxable under 28 U.S.C. § 1920(2)).

The sixth task performed by the vendor was the transfer of the administrative record to CDs. As explained in the declaration, this work involved

> copying final formatted files to searchable CDs, at $55 per hour x 2 hours and including materials cost of $10 per standard CD and $20 per gold archival CD = $320 for 23 standard CDs and $60 for 2 gold archival CDs[.]

Harroun Decl. ¶ 2. "[B]urning [electronic] files onto discs" is considered "making copies" under § 1920(4). *Country Vintner of N.C.*, 718 F.3d at 260.[8] However, courts do not tax costs for additional copies made for internal use because these copies are not "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); *see also McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990) (holding that § 1920(4) "does not encompass [party's] copying of court

---

Decl. ¶ 2. The Court relies on the invoice's representation that the fifth task concerned the addition of Bates numbers *in the index*, not to the documents themselves, thereby avoiding redundancy between the second and fifth tasks.

[8] The cost of the CDs should be included in the cost of "making copies," for "copies" could not exist without the medium onto which the original material is reproduced. The Court notes that although the CD unit cost figures seem high, they are reasonable after accounting for the cost of the data transfer. *See In re Aspartame Antitrust Litig.*, 817 F. Supp. 2d at 620 (holding that $15–$35 per CD and $25–$50 per DVD were not "excessive" given that figures included not only blank media but also "cost of transferring information," and were comparable to prices charged by other vendors).

filings for its own use"); *Friedlander v. Nims*, 583 F. Supp. 1087 (N.D. Ga. 1984) (taxing costs for copies that party "was required to file and serve" but explaining that costs of any copies made "for the [copying] attorneys' own use" would not be taxable).

     Here, although the entire administrative record fit onto a "single compact disc," Adamson Decl. Certifying the Administrative Records, ECF No. 26-1, the vendor created twenty-five discs.  Of these twenty-five, the two gold archival CDs submitted to the Court (one for the Office of the Clerk and one for chambers) were "necessarily obtained for use in the case."  28 U.S.C. § 1920(4); *see also* Scheduling Order, ECF No. 11 (ordering Forest Service to "lodge the administrative record in PDF format on DVD or CD-ROM").  "Additional copies" of the record—presumably on the standard CDs—were served by the Forest Service on Plaintiffs' and Intervenors' counsel.  Notice of Lodging and Serving the Administrative Records, ECF No. 24.  Although the record is silent as to how many copies the various parties received, the Court finds that of the twenty-three standard CDs, only three were "necessarily obtained for use in the case"—one for each counsel of record.  *Cf. Smith v. Teamsters Local 705*, No. 96 C 1370, 1998 WL 887086, at *5 (N.D. Ill. Dec. 11, 1998) (allowing "one [copy] for each party").[9]  Accordingly, Plaintiffs shall be taxed for this service in the amount of $101.73 (the sum of $13.91 per standard disc x 3 discs, and $30 per archival disc x 2 discs, distributing labor costs to each disc[10]).

---

    [9] Mr. Kenna of Public Interest Environmental Law represented all Plaintiffs; Mr. Hill of the U.S. Department of Justice represented the Forest Service; and Mr. Garden of the Garden Law Firm P.C. represented all Intervenors.

    [10] The vendor's invoice helpfully distributes the $110 in labor costs across the sub-totals for standard and archival CDs.  *See* Invoice, ECF No. 51-1. Accordingly, the Court has calculated its unit costs here by dividing the labor-inclusive sub-totals by the number of units ($320 / 23 for the standard CDs, and $60 / 2 for the gold archival CDs).

Lastly, the vendor physically transported the record materials, billing the Forest Service for "packaging, pickup, and delivery, at a charge of $100." Harroun Decl. ¶ 2. The Court readily concludes that these incidental "delivery expense fees" cannot be taxed under § 1920(4). *Sharp v. City of Palatka*, No. 3:06-CV-200-J-TEM, 2008 WL 4525092, at *3 (M.D. Fla. Oct. 6, 2008); *cf. Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 981 (N.D. Ill. 2003) ("Costs associated with delivering, shipping, or handling transcripts are ordinary business expenses and are not recoverable.").

In sum, the Court concludes that only the conversion of documents to PDF format and the transfer of these electronic files to five CDs constitute "making copies" under 28 U.S.C. § 1920(4), and that only the costs for these vendor services—$519.75 and $101.73, respectively—shall be taxed against Plaintiffs.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion to retax costs (ECF No. 48) is **GRANTED IN PART AND DENIED IN PART**. It is hereby **ORDERED** that costs shall be taxed against Plaintiffs in the amount of $621.48.

**SO ORDERED**.

Dated:  December 31, 2014                                        RUDOLPH CONTRERAS
                                                                 United States District Judge