Oliver J. H. Stiefel, OSB # 135436
(503) 227-2212 | oliver@crag.org
Meriel L. Darzen, OSB # 113645
(503) 525-2725 | meriel@crag.org
CRAG LAW CENTER
3141 E. Burnside St.
Portland, Oregon 97214
Fax: (503) 296-5454

Erin Hogan-Freemole
(971) 417-6851 | ehoganfreemole@wildearthguardians.org
WILDEARTH GUARDIANS
213 SW Ash Street, Suite 202
Portland, OR 97204

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **OREGON WILD**, an Oregon nonprofit corporation; **WILDEARTH GUARDIANS**, a New Mexico nonprofit corporation; and **GO Alliance**, an Oregon nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES FOREST SERVICE**, **DONALD ASHCRAFT**, in his official capacity as Lakeview Ranger District Ranger; **JEANNETTE WILSON**, in her official capacity as Silver Lake Ranger District Ranger; **TOM SHULTZ**, in his official capacity as Chief of the U.S. Forest Service; and **BROOKE ROLLINS**, in her official capacity as Secretary of Agriculture,<br><br>Defendants. | Case No. 1:22-cv-01007<br><br>**DECLARATION OF JAYNE GOODWIN** |

I, Jayne Goodwin, with full knowledge of the penalties for perjury, declare as follows:

1. The facts set forth in this declaration are based on my personal knowledge. If called as a witness in these proceedings, I could and would testify competently to these facts.

2. I reside in Crescent, Klamath County, Oregon.

3. From 1973 to 2010, I worked for the U.S. Forest Service, starting as a Forestry Technician and retiring as a Resource Planner/NEPA Coordinator. I worked as Resource Planner/NEPA Coordinator on the Chemult Ranger District of the Fremont-Winema National Forest from 1990 to 2010. In that capacity, I was integrally involved in developing and implementing the 2006 Jack Creek and Rock Creek Meadows Fuel Reduction and Meadow Restoration Project ("Jack Creek Project").

4. I am the author of the Legal Notice of Comment Opportunity: Jack Creek and Rock Creek Meadows Fuel Reduction and Round Meadow Riparian Restoration; the Jack Creek and Rock Creek Meadows Fuel Reduction Project: Proposed Action; and the Legal Notice of Decision: Jack Creek and Rock Creek Meadows Fuel Reduction and Meadow Restoration Project.

5. I recall this project well. I have also reviewed several planning documents to refresh my memory.

6. The Jack Creek Project was developed as part of a large-scale planning effort in the Jack Creek watershed, collectively known as Big Jack. After scoping and public outreach, we ultimately developed multiple smaller projects under the Big Jack plan.

7. Big Jack included both wildlife habitat restoration projects and commercial timber sales. We did not typically combine the two types of work in the same project, because they relied on different funding sources, proceeded on different timeframes, required different mitigation

Goodwin Declaration—1

measures and were implemented by different people. The goals and impacts of a primarily commercial timber sale are typically quite different from those of a wildlife habitat project.

8. Commercial timber sales are funded under the timber planning budget. There were multiple timber sales of this type under Big Jack, but not as part of the Jack Creek Project.

9. Planning for the Jack Creek Project was funded by wildlife and fuels reduction (not timber) appropriated dollars. There was never a commercial timber sale component to this project. It was implemented primarily under service contracts funded by the Secure Rural Schools Act via the Klamath/Lake County Resource Advisory Committee and appropriated wildlife funds. The goal was to restore meadow, forested riparian and adjacent upland habitat.

10. Due to fire exclusion during the 20th century, lodgepole pine has encroached into previously open meadow habitat in the Jack Creek watershed. This has the effect of shading out the grass and forb vegetation communities that typify meadows. Lodgepole pine grows very densely and often shades out most of the historically dominant plant species. This in turn impacts a variety of species that depend on meadow habitat, most notably including elk.

11. The Fremont-Winema National Forest cooperates with the Oregon Department of Fish and Wildlife for elk habitat management in the Jack Creek area. The Oregon Department of Fish and Wildlife has identified riparian areas in this watershed as high-value elk calving habitat. Because of this management focus, the Rocky Mountain Elk Foundation was involved in developing the Jack Creek Project.

12. The Jack Creek Project area is not very conducive to commercial logging—there is limited road access, and most of the timber is of low quantity and low commercial value. To my knowledge, the only recent (2005) commercial timber sale that occurred in the immediate project

Goodwin Declaration—2

area was the small (190-acre) State Project, for which the NEPA process was completed in about 2001.

13. The Jack Creek Project did not involve any timber sales of this sort.

14. Instead, the Jack Creek Project authorized "forest product removal" permits. This type of permit allows individuals to pay for and remove a small number of trees for use as house logs, posts and poles, or a certain amount of firewood.[1]

15. Although these forest products have some commercial value, the work done under such permits does not resemble a logging project. There is no heavy equipment involved—no skidders, no feller-bunchers, and no log trucks. Instead, permittees will typically go out with a chainsaw and a pickup truck to cut firewood or poles and posts. This is entirely unlike implementation of a commercial timber sale.

16. I do not recall any commercial firewood cutters or post and pole cutters actually working on the Jack Creek Project. The Klamath County Corrections crew took some commercial-size dead and green lodgepole for firewood for a senior citizens firewood program.

17. The work for the Jack Creek Project was accomplished primarily through service contracts funded by the Klamath/Lake County Resource Advisory Committee for the purposes of fuel reduction, meadow restoration, and wildlife habitat improvement. Contractors were paid to thin noncommercial green trees in and adjacent to the designated riparian areas. Contract hand crews were paid to pile slash in the riparian habitat and contract machines were paid to pile slash

---

[1] The Forest Service distinguishes between these "forest product removal permits" and "timber sales." *See* U.S. Forest Serv., *Timber Sale, Stewardship, and Forest Products Contracts and Permits*, https://www.fs.usda.gov/forestmanagement/products/contracts.shtml. The "forest product" permit is "used to collect fees and to authorize both personal and commercial use forest product removal that is expected to have limited resource impacts." This is different than the timber contracts under which timber sales take place.

Goodwin Declaration—3

in the adjacent upland. Fire crews burned slash piles in the project area. This is how the bulk of treatment acres were accomplished.

18. There was no commercial logging permitted under these service contracts.

19. Because we intended to offer some forest product removal permits and reduce hazardous fuels, we initially suggested the Jack Creek Project under CE-10, the categorical exclusion for fuels reduction that allowed up to 1,000 acres of commercial thinning. We limited the entire project to 990 acres so that we could offer forest product permits anywhere in the Project area under CE-10. Because the Jack Creek Project was also a habitat and meadow restoration project, we also applied CE-6, the categorical exclusion for "wildlife habitat improvement."

20. No timber sales were approved under the Jack Creek and Rock Creek Meadows Fuels Reduction and Meadow Restoration Project, and no commercial forest products permits were made available under CE-6.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct.

Executed this 18th day of August, 2025.

_____

JAYNE GOODWIN

Goodwin Declaration—4