**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB #054338**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
sean.martin@usdoj.gov
Telephone:  (503) 727-1010
       Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

|  |  |
|---|---|
| **OREGON WILD**; **WILDEARTH GUARDIANS**; and **GO ALLIANCE**, | Case No. 1:22-cv-01007-MC |
|        Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **UNITED STATES FOREST SERVICE**; **DONALD ASHCRAFT**; **JEANNETTE WILSON**; **TOM SCHULTZ**; and **BROOKE ROLLINS**, | |
|        Defendants. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION AND SUMMARY OF ARGUMENT .................................... 1

ARGUMENT ..................................................................................... 2

    I.   This Court should grant summary judgment against Plaintiffs' second claim for relief .................................................................. 2

        A. Plaintiffs' second claim is time-barred ............................... 2

            1.  The second claim accrued for Oregon Wild in 2006 ....................... 4

            2.  The second claim accrued for WildEarth Guardians in 2014 ........ 8

        B. Plaintiffs' second claim is waived/forfeited ...................... 11

        C. Laches bars Plaintiffs' second claim ................................ 15

        D. Plaintiffs' second claim fails on its merits ........................ 18

            1.  Supreme Court NEPA precedent applies in this case ................ 18

            2.  The Forest Service's Fremont-Winema project-level findings are relevant ................................................................... 23

            3.  Plaintiffs would engraft phantom procedures onto NEPA .......... 25

            4.  Plaintiffs fail to show any NEPA duty to examine the effects of "commercial logging" in the promulgation of CE-6 ................ 27

            5.  The Forest Service met its applicable NEPA duties in promulgating CE-6 ....................................................... 30

    II.  This Court should grant summary judgment against Plaintiffs' third claim ................................................................... 34

        A. Plaintiff GO Alliance fails to meet its burden to establish its standing ..................................................................... 34

B. Summary judgment is otherwise appropriate against the
   third claim ........................................................................ 36

CONCLUSION AND REMEDY ....................................................... 38

CERTIFICATE OF COMPLIANCE ................................................. 40

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851
(9th Cir. 1999).................................................................. 23

*All. for the Wild Rockies v. U.S. Forest Serv.*, No. 2:24-CV-157-RLP, 2025
WL2655984 (E.D. Wash. Sept. 16, 2025) ...................................... 7

*Animal Def. Council v. Hodel*, 840 F.2d 1432 (9th Cir. 1988) .......................... 6

*Apache Survival Coal. v. United States*, 21 F.3d 895 (9th Cir. 1994)............. 15

*Bowen v. City of New York*, 476 U.S. 467 (1986)................................................ 3

*Cascadia Wildlands v. BLM*, -- F.4th --, 2025 WL 2460946
(9th Cir. August 27, 2025)................................................................. 30, 32

*Cal. Wilderness Coal. v. U.S. Dep't of Energy*,
631 F.3d 1072 (9th Cir. 2011) ........................................................ 33

*Colo. Wild v. U.S. Forest Serv.*, 435 F.3d 1204 (10th Cir. 2006) .................... 26

*Corner Post, Inc. v. Bd. of Governors of the Fed. Reserve Sys.*,
603 U.S. 799 (2024) ................................................................ 2, 3, 4

*Cruz v. Bondi*, 146 F.4th 730 (9th Cir. 2025) .............................................. 9-10

*Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752 (2004)................................ 12, 13

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Review*,
959 F.2d 742 (9th Cir. 1991) ........................................................ 22

*Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020) ...................... 20

*Florida Power & Light v. Lorion*, 470 U.S. 729 (1985) ...................................... 6

*Forest Conservation Council v. U.S. Forest Serv.*, No. CV-03-0054-PCT-FJM,
2003 WL 23281957 (D. Ariz. July 9, 2003) ............................................ 8, 16

*Forest Conservation Council v. U.S. Forest Serv.*, 110 Fed. App'x 26
  (9th Cir. 2004)........................................................................... 8, 16

*Friends of the Inyo v. U.S. Forest Serv.*, 103 F.4th 543 (9th Cir. 2024).......... 10

*Gifford Pinchot Task Force v. U.S. FWS*, 378 F.3d 1059 (9th Cir. 2004) ....... 36

*Havasu Water Co. v. U.S. Dep't of Interior*, No. EDCV 24-464-GW-SPx,
  2024 WL 4404956 (E.D. Cal. Aug. 27, 2024).................................... 4

*Heartwood, Inc. v. U.S. Forest Serv.*, 230 F.3d 947 (7th Cir. 2000) ............... 26

*Heartwood, Inc., v. U.S. Forest Serv.*, 73 F. Supp. 2d 962 (N.D. Ill. 1999)..... 25

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990) ...................................... 2

*Lands Council v. McNair*, 629 F.3d 1070 (9th Cir. 2010) .............................. 12

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .................................... 34, 35-36

*McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973 (9th Cir. 2002).... 14

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010).......................... 35

*Mountain Cmtys. for Fire Safety v. Elliott*, 25 F.4th 667
  (9th Cir. 2022).................................................................. 15, 19, 21

*ONDA v. Jewell*, 840 F.3d 562 (9th Cir. 2016) ............................................... 13

*Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069 (9th Cir. 2010)............... 38

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*,
  145 S. Ct. 1497 (2025) .........................18-19, 19, 20, 25, 27, 29-30, 30, 32, 36

*Sierra Club v. Bosworth*, 510 F.3d 1016 (9th Cir. 2007) ........................... 32, 33

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................. 34, 35

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994) ............. 38

*United States v. Page*, 116 F.4th 822 (9th Cir. 2024) ....................................... 2

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) ................................................................. 13, 25

*Wilderness Soc'y v. Robertson*, 824 F. Supp. 947 (D. Mont. 1993) ................. 10

*Wilkins v. United States*, 598 U.S. 152 (2023) .................................................. 3

## FEDERAL STATUTES

28 U.S.C. § 2401(a) ................................................................................. 2

42 U.S.C. § 4336f (2025) ........................................................................ 16

## FEDERAL REGULATIONS

40 C.F.R. § 1507.3(a) (1978) ............................................................ 16, 21, 30

40 C.F.R. § 1508.4 (1978) ................................................................... 16, 31

## OTHER AUTHORITIES

Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, § 321,
    137 Stat. 10 ...................................................................................... 16

## INTRODUCTION AND SUMMARY OF ARGUMENT

This Court should grant Defendants summary judgment against Plaintiffs' second and third NEPA claims.  In their second claim, two Plaintiffs claim that CE-6 was illegally promulgated in 1992 and challenge CE-6 as applied to three timber stand and wildlife habitat improvement projects on the Fremont-Winema National Forest.  This claim is time-barred.  In the alternative, it is waived and forfeited because Plaintiffs never raised it during the NEPA review of the three projects, and/or it is barred by laches.  In any event, the claim fails on its merits, as Defendants explain below.

Summary judgment is also appropriate against Plaintiffs' third claim.  All three Plaintiffs challenge CE-6 directly under NEPA.  But two Plaintiffs are time-barred from bringing this claim and the third Plaintiff—the GO Alliance—fails to establish its requisite standing.  Aside from that, Plaintiffs' claim fails under laches and/or on its merits.

## ARGUMENT

### I. This Court should grant summary judgment against Plaintiffs' second claim for relief.

As Defendants explained, summary judgment is warranted against Plaintiffs' second claim, which challenges CE-6 as applied to the commercial thinning authorized in the South Warner, Bear Wallow, and Baby Bear projects. *See* Am. Compl. ¶¶ 196-209.

### A. Plaintiffs' second claim is time-barred.

The second claim is time-barred under *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*. *Corner Post* establishes that the applicable six-year statute of limitations—28 U.S.C. § 2401(a)—begins running once a plaintiff is injured by final agency action. 603 U.S. 799, 809 (2024). As a condition on the government's waiver of its sovereign immunity, the statute of limitations must be construed strictly in the government's favor. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990). As the Ninth Circuit recognized post-*Corner Post*, courts "must strictly construe statutes of limitations in the government's favor." *United States v. Page*, 116 F.4th 822, 828 (9th Cir. 2024).

Plaintiffs argue that it is wrong to construe the statute of limitations strictly in the government's favor, because 28 U.S.C. § 2401(a) is not

jurisdictional.  But it is an open question whether section 2401(a) is jurisdictional or not, and either way the statute is still implementing a waiver of sovereign immunity.  A non-jurisdictional statute of limitations is construed strictly in the government's favor.  In *Bowen v. City of New York*, 476 U.S. 467, 479 (1986), the Supreme Court recognized that even when a statutory time limit to bring an action against the government is "not jurisdictional," it is nevertheless "a condition on the waiver of sovereign immunity and thus must be strictly construed."  Similarly, in *Wilkins v. United States*, 598 U.S. 152, 162 (2023), the Supreme Court recognized that strict construal "[does] not mean that time limits "are necessarily jurisdictional."

Plaintiffs also argue that *Corner Post* interpreted section 2401(a) in a "plaintiff-centric" way, Pls.' Reply 4, but that case did not upend the strict-construal doctrine.  Instead, *Corner Post* recognized that 2401(a) has "plaintiff-focused language [that] makes it an accrual-based statute of limitations" rather than a protective "statute of repose that begins to run when agency action becomes final."  603 U.S. at 813.  *Corner Post* established that accrual of a claim requires final agency action and injury, but it did not establish that courts must defer to the plaintiffs to determine when they have suffered an injury.

Page 3    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

Per *Corner Post*, section 2401(a) codifies the "traditional accrual rule" that "a statute of limitations begins to run at the time the plaintiff has the right to apply to the court for relief." *Id*. at 811 (cleaned up). *See Havasu Water Co. v. U.S. Dep't of Interior*, No. EDCV 24-464-GW-SPx, 2024 WL 4404956, *7 (E.D. Cal. Aug. 27, 2024) (discussing *Corner Post* and finding plaintiff's claims time barred, recognizing that "when the accrual period for Plaintiff's APA claims began depends on when it knew, or *should have known*, of the alleged [failure] such that it could have filed suit and obtained relief") (emphasis supplied).

The circumstances show that Plaintiffs' second claim is time-barred, as Defendants explain below.

### 1. The second claim accrued for Oregon Wild in 2006.

Plaintiff Oregon Wild is time-barred from bringing the second claim, because its claim accrued in 2006. *See* ECF 72, Defs.' Memo. 21-24. In January 2006, the Fremont-Winema National Forest authorized the Jack Creek and Rock Creek Meadows project that involved commercial thinning under CE-6. SUPP AR 169-73, SUPP AR 00222. Under CE-6, that project authorized thinning of overstocked green trees up to 21 inches in diameter and the cutting of encroaching lodgepole pine. SUPP AR 170-71. The statute of limitations is strictly construed in the government's favor and the administrative record

shows that Oregon Wild knew in January 2006 that the Forest Service was using CE-6 for commercial thinning in the stand/habitat improvement context. Oregon Wild's claim accrued in 2006 and is now time-barred.

Plaintiffs fail to rebut that their claim reasonably accrued in 2006. They argue that the Jack Creek and Rock Creek Meadows project did not authorize commercial thinning under CE-6. Pls.' Reply 4. But the Forest Service told the public in January 2006 that the project involved commercial and non-commercial thinning of overstocked green trees and that such trees >7 inches diameter "are merchantable as sawlogs, chips, or posts and poles." SUPP AR 170. Further, the Forest Service made clear that the thinning of overstocked green trees—and cutting of lodgepole pine encroachment—was authorized under CE-6. SUPP AR 171. And Plaintiff participated in the NEPA process for the project. *See* SUPP AR 173.

Plaintiffs misrepresent the Jack Creek and Rock Creek Meadows project by saying its "only commercial material" would come from dead trees. Pls.' Reply 6. In fact, the project approved not only the commercial removal of dead trees, but the commercial (and non-commercial) thinning of overstocked green trees under CE-6. SUPP AR 169-70. The Forest Service approved the project with these elements along with the cutting of lodgepole pine encroachment. *See* SUPP AR 171 (noting the agency's approval of the

Page 5    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

project "as described" with all its proposed elements).  Plaintiff Oregon Wild

questioned the need to remove large down logs (dead trees) in the project, and

the Forest Service responded to this concern but did not limit the project's

scope.  *See* SUPP AR 174.

  To save their stale claim, Plaintiffs attempt to supplement the record

with new declarations about what supposedly happened nearly twenty years

ago.  ECF 78, 79 (Goodwin Declaration and Third Heiken Declaration).

These extra-record declarations merit no weight.  The APA contemplates that

judicial review is undertaken based on the record compiled by the agency.

*See*, *e.g.*, *Florida Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985).

Plaintiffs fail to explain why the record should be supplemented with their

new declarations.  This Court's task is to apply the appropriate APA standard

of review "based on the record the agency presents." *Id*. at 743-44; *Animal*

*Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) ("[J]udicial review

of agency action is limited to review of the administrative record.").  Nor, in

the case of the Goodwin Declaration, do post-decisional statements from a

long-retired federal employee rebut the presumptive validity of the

administrative record.

  Plaintiffs attempt to supplement the record is further dubious, because

they represented to this Court in April 2025 that "they do not believe further

supplementation of the record based on the amended complaint is appropriate or required." ECF 61 at 4.  Given this representation, it is inappropriate for Plaintiffs—without any attempt at explanation—to rely on extra-record evidence.  Notably also, Plaintiffs represented in April 2025 that they would notify the government of "any objections" to the administrative record by a date certain.  *Id.* at 6.  Under the agreed timeline, Plaintiffs did not identify any documents that needed to be added to the record beyond those that are already there.  Plaintiffs' extra-record declarations are inappropriate and should not be considered.  *See All. for the Wild Rockies v. U.S. Forest Serv.*, No. 2:24-CV-157-RLP, 2025 WO 2655984, *3 (E.D. Wash. Sept. 16, 2025) (rejecting a belated attempt to expand the record in a NEPA case).

Further, it is concerning that Plaintiffs argue that their second claim accrued in 2021, Pls.' Reply 8, when they represented earlier in this case that this claim accrued in 2018.  Plaintiffs told this Court that the Forest Service "First Applied CE-6 So as to Injure Wild in 2018."  ECF 31 at 51.  Plaintiffs' new, unexplained shift in position further undermines the credibility of their accrual arguments.

As part of their accrual-in-2021 argument, Plaintiffs argue that their claim did not accrue in 2003 when the Forest Service authorized commercial

thinning for a 19,000+ acre CE-6 project in Arizona.  Pls.' Reply 8-9.  That 2003 CE-6 project resulted in federal litigation, including a 2003 district court decision and 2004 Ninth Circuit appeal decision.  *Forest Conservation Council v. U.S. Forest Serv.*, No. CV-03-0054-PCT-FJM, 2003 WL 23281957, *1, *3, *4 (D. Ariz. July 9, 2003), *aff'd*, 110 Fed. App'x 26 (9th Cir. 2004). Defendants are not arguing that the 2003 CE-6 decision and ensuing public litigation started the clock on Plaintiffs' claims here.  Instead, the 2003 CE-6 litigation is relevant to laches.  *See infra* Argument I.C.

### 2. The second claim accrued for WildEarth Guardians in 2014.

Plaintiff WildEarth Guardians is also time-barred from bringing the second claim, because its claim accrued in 2014.  *See* Defs.' Memo. 21-24.  The administrative record shows that the Forest Service in January 2014 informed the public that it had authorized the several-thousand acre Cordovas restoration project with commercial thinning under CE-6 on the Santa Fe National Forest in New Mexico.  P AR 3534-36.[1]  The project's commercial thinning involved "heavy equipment or chainsaws" and "yarding

---

[1] The Cordovas decision memo in the administrative record and other information on the Cordovas project is available at https://www.fs.usda.gov/r03/santafe/projects/archive/36980 (last visited September 25, 2025).

Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

to designated landings."  P AR 3534.  As the Forest Service told the public, the project "will provide . . . saw timber to small mills in the area in support of local economies."  P AR 3535.

The Cordovas project occurred in WildEarth Guardians' backyard; the group is headquartered in Santa Fe.  ECF 20, Declaration of Chris Krupp ¶ 4. The statute of limitations is strictly construed in the government's favor and WildEarth Guardians was injured in January 2014.  Its claim accrued then because it should have known then that the Forest Service was using CE-6 for commercial thinning using heavy equipment to provide timber to mills just a stone's throw from its national office.  WildEarth Guardians <u>does not</u> disclaim its interests in the Santa Fe National Forest and <u>does not</u> disclaim injury from the Cordovas decision.

Plaintiffs' suggestion is wrong, Pls.' Mem. 18-19, that accrual is subjective and depends on the government's proving that a plaintiff had actual notice of a NEPA decision.  Instead, the standard involves a reasonable "should know" standard—a traditional accrual rule—and the government is presumed to act with regularity and provide appropriate notice of its official NEPA decisions.  *See, e.g., Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025) (noting that courts "have long presumed that official acts of public officers, in the absence of clear evidence to the contrary, properly

discharged their official duties") (cleaned up).

The administrative record shows that the Forest Service provided advance public notice of the Cordovas project via the Santa Fe National Forest's "SOPA"—schedule of proposed actions[2]—and explained administrative appeal and project implementation timing to the public.  P AR 3535-36.  Plaintiffs provide zero evidence to rebut the presumption of regularity and appropriate notice that accompanied the Forest Service's NEPA decision in Cordovas.  Nor does *Wilderness Society v. Robertson*, 824 F. Supp. 947, 951 (D. Mont. 1993), assist Plaintiffs.  That is because the agency's "decision notice" there provided notice, as opposed to an earlier letter or press release.  *Id*.  Here, similarly, the January 2014 Cordovas decision notice provided Plaintiffs reasonable notice.

The same "injuries" that animate WildEarth Guardians' instant litigation involving the three Fremont-Winema projects apply to the Cordovas project decision.  In the instant case, WildEarth Guardians represents that it was injured by the use of "heavy equipment" and "cutting down trees" and that a Forest Service decision "not to implement commercial logging" would "serve . . . the interests of WildEarth Guardians."  ECF 20, ¶¶

---

[2] *See Friends of the Inyo v. U.S. Forest Serv.,* 103 F.4th 543, 549 (9th Cir. 2024) (discussing a Forest Service SOPA).

Page 10    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

12, 15.  The 2014 Cordovas project similarly involved heavy equipment, cutting down trees and a Forest Service decision to implement commercial thinning—in the backyard of WildEarth Guardians' headquarters.  A plaintiff can't sit on its hands for years and years and then subjectively decide it is newly "injured" by a project that raises the same issues as before.  WildEarth Guardian's challenge to CE-6 as applied to commercial thinning reasonably accrued in 2014.

For these reasons, this Court should grant summary judgment to Defendants against Plaintiffs' second claim.

### B. Plaintiffs' second claim is waived/forfeited.

As Defendants explained, summary judgment is also appropriate against Plaintiffs' second claim on waiver/forfeiture grounds.  *See* Defs.' Memo. 24-27.  The second claim asserts a NEPA challenge to the promulgation of CE-6 itself, as applied to the three Fremont-Winema projects.  It is separate and distinct from Plaintiffs' first claim challenging whether the three projects fit within CE-6; this Court and the Ninth Circuit ruled against the first claim.

Plaintiffs waived/forfeited their second claim by never raising any concerns about CE-6's promulgation to the Forest Service during the NEPA processes for the three projects.  Despite their extensive input on the three

Page 11     Defendants' Reply in Support of Cross-Motion for Summary
           Judgment; *Oregon Wild, et al. v. United States Forest Service, et
           al.*, Case No. 1:22-cv-01007-MC

projects, including comments signed by Plaintiffs' counsel, Plaintiffs never mentioned any concern that CE-6 had been illegally promulgated—decades before—and therefore could not be used in the restoration projects.

A plaintiff forfeits arguments that are not raised during the administrative process. *See Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 763-65 (2004). Those challenging an agency's compliance with NEPA "must structure their participation so that it alerts the agency to [their] position and contentions, in order to allow the agency to give the issue meaningful consideration." *Id.* at 764 (cleaned up). This requirement serves "to permit administrative agencies to utilize their expertise, correct any mistakes, and avoid unnecessary judicial intervention in the process." *Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010).

Plaintiffs fail to acknowledge either *Public Citizen* or *Lands Council*. Instead, they argue that they gave enough notice in their project comments to allow the Forest Service to rectify the supposed violations at issue with their second claim. Pls.' Reply 10. Not so. Plaintiffs' comments focused on their contention that the three projects did not fit within CE-6 and therefore required additional NEPA review. *See* Pls.' Reply 10. Those comments raised the distinct concerns that animated Plaintiffs' first claim for relief. Plaintiffs made no comments, however, raising the separate and distinct

Page 12    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

concern animating their second claim that CE-6 was illegally promulgated in the first place.

Plaintiffs argue that they gave the Forest Service the opportunity to rectify the concerns in their second claim. But this argument is contradicted by their argument that requiring greater specificity would have been futile because it was too late to rectify the problem. *See* Pls.' Reply 11-12. According to Plaintiffs, the Fremont-Winema with the three projects "lacked the ability to fix the Forest Service's rulemaking in 1992," and therefore Plaintiffs did not need to administratively raise the concerns that animate their second claim. But Plaintiffs cite no NEPA cases recognizing a futility exception, and the Supreme Court has emphasized the importance of issue exhaustion in NEPA proceedings. *See, e.g., Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553 (1978); *Pub. Citizen*, 541 U.S. at 764-65.

Further, Plaintiffs' argument runs headlong into *ONDA v. Jewell*, where the Ninth Circuit established that the failure to administratively raise a specific claim during the NEPA process subjects the claim to dismissal in later federal litigation. *See* 840 F.3d 562, 571–74 (9th Cir. 2016) (finding a failure to exhaust a "substantively distinct" NEPA issue).

Page 13    Defendants' Reply in Support of Cross-Motion for Summary
            Judgment; *Oregon Wild, et al. v. United States Forest Service, et
            al.*, Case No. 1:22-cv-01007-MC

Plaintiffs' futility argument also runs counter to the fact that Plaintiffs'
second claim challenges the promulgation of CE-6 *as applied to three specific
projects* which had contemporaneous administrative records and were not
locked into place in 1992. Plaintiffs are wrong that the Fremont-Winema
lacked any capacity to remedy the issue during the NEPA process. It would
not have been a post-hoc rationalization for the Forest Service to address
Plaintiffs' as-applied challenge to CE-6, while it considered whether to
authorize the projects. Plaintiffs rely on *McBride Cotton & Cattle Corp. v.
Veneman*, 290 F.3d 973, 982 (9th Cir. 2002), but that was not a NEPA case
and there an agency appeals office lacked authority to resolve an issue. Here,
by contrast, the Fremont-Winema in inviting NEPA comments was literally
in the process of compiling a record to decide on the specific lands projects.

Plaintiffs "hid the ball" on a distinct NEPA issue and therefore should
not now be permitted to maintain a NEPA claim premised on that distinct
issue. Had Plaintiffs raised their NEPA issue, the Forest Service could have
examined it and possibly decided to take a different approach.

The problem is not a failure by Plaintiffs to incant "precise legal
formulations" or cite a "relevant statute or regulation." *See* Pls.' Reply 10.
The problem is that Plaintiffs' second claim centers on a distinct NEPA issue
that was never raised to the Forest Service in the first place. Plaintiffs <u>did</u>

Page 14    Defendants' Reply in Support of Cross-Motion for Summary
Judgment; *Oregon Wild, et al. v. United States Forest Service, et
al.*, Case No. 1:22-cv-01007-MC

raise their issue that the three projects did not fit within CE-6, but did not raise the distinct issue that CE-6 was illegally established and could not be relied on for the three projects.

This Court should grant summary judgment to Defendants against Plaintiffs' second claim.

**C. Laches bars Plaintiffs' second claim.**

As Defendants also explained, in the alternative, Plaintiffs' challenge to how the Forest Service promulgated a 1992 regulation—30 years before this lawsuit was filed—is barred by laches. *See* Defs.' Mem. 27-29. Laches should apply because (1) Plaintiffs lacked diligence in pursuing their claim; and (2) prejudice to the government would result from the lack of diligence. *Apache Survival Coal. v. United States*, 21 F.3d 895, 905 (9th Cir. 1994)

At equity, Plaintiffs lacked diligence in pursuing their claim, apart from the legal statute of limitations inquiry. Plaintiffs could and should have pursued their challenge to the 1992 regulation much earlier. Beginning in 1992, Plaintiffs had the right to challenge the regulation, as the plain language of CE-6 allows commercial thinning. "CE-6 unambiguously allows commercial thinning." *Mountain Cmtys. for Fire Safety v. Elliott*, 25 F.4th 667, 675 (9th Cir. 2022). For decades, CE-6 has plainly allowed the Forest

Service to employ commercial thinning in CE-6 projects without an acreage limit but with specific protective sideboards.

Plaintiffs also lacked diligence because on top of CE-6's plain language, it was public record as of 2003 that the Forest Service was *actually using* CE-6 for projects with commercial thinning.  Even prior to the 2006 Jack Creek and Rock Creek Meadows decision and the 2014 Cordovas decision, *see supra* Argument I.A., the Forest Service in 2003 authorized commercial thinning for a large CE-6 project that prompted federal litigation.  *Forest Conservation Council v. U.S. Forest Serv.*, No. CV-03-0054-PCT-FJM, 2003 WL 23281957, *1, *3, *4 (D. Ariz. July 9, 2003), *aff'd*, 110 Fed. App'x 26 (9th Cir. 2004).

In waiting multiple decades to challenge CE-6, Plaintiffs' lack of diligence is also apparent in that the landscape underpinning their second claim has greatly shifted.  Congress amended NEPA in 2023 and in 2025. *See* Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, § 321, 137 Stat. 10, 38-46; 42 U.S.C. § 4336f (2025).  And the White House has rescinded the NEPA regulations at issue with Plaintiffs' NEPA claims.  *See* Defs.' Mem. 34 n.9; 40 C.F.R. §§ 1507.3, 1508.4 (1978 CEQ regulations rescinded in 2025). Plaintiffs are asking this Court to review a decades-old regulation that no

longer exists as it was[3] and which resides under a new and different NEPA framework than in 1992.

Further, letting Plaintiffs wait so long for their challenge to the regulation prejudices the government. The use of CE-6 in projects with commercial thinning is long-established and litigation over such use has long been public record. The Forest Service has extensively relied on the validity of CE-6 to authorize restoration projects including commercial thinning. Plaintiffs argue that "the need to prepare an EA or EIS for any future project cannot be prejudicial" to the government. Pls.' Reply 14. This is wrong, because Plaintiffs' second claim is brought only as applied to the three Fremont-Winema restoration projects. It would be prejudicial for Plaintiffs to obtain relief requiring an EA or EIS for other, future projects, as that relief is well beyond the scope of their second claim.

As for Plaintiffs' third claim, their requested relief is also prejudicial. It would disrupt the applicability of CE-6 after 33 years of Forest Service implementation and alter the agency's well-established process to efficiently improve wildlife habitat, address forest health issues and reduce wildfire risk across thousands of acres. *See* ECF 73, Declaration of Bradley Kinder ¶ 3.

---

[3] *See* Defs.' Mem. 7 (noting that CE-6 was reorganized in 2025 within the Code of Federal Regulations).

Page 17    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

For all these reasons, this Court should grant summary judgment to Defendants against Plaintiffs' second claim.

### D. Plaintiffs' second claim fails on its merits.

#### 1. Supreme Court NEPA precedent applies in this case.

Aside from the threshold problems with the second claim, it fails on its merits.

Plaintiffs argue that the Forest Service violated NEPA because it promulgated a rule (CE-6) that exempted a category of activities from full NEPA review "without demonstrating that [such activities] will have no individually or cumulatively significant impacts." Pls.' Reply 15. But Plaintiffs fail to identify any provision in the NEPA statutes that requires a "significance" finding in administratively promulgating a CE. Plaintiffs say that the promulgation of CE-6 required a "programmatic cumulative effects analysis at the rulemaking stage." Pls.' Reply 28. But Plaintiffs fail to cite any statutory provision requiring such a NEPA analysis when neither an EA nor EIS was required.

Promulgating CE-6 was not a NEPA project, did not authorize any on-the-ground activity, and did not even require preparation of an EA or EIS. As recognized by *Seven County Infrastructure Coalition v. Eagle County, Colo.*, 145 S. Ct. 1497 (2025), NEPA "simply prescribes the necessary process

Page 18    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

for an agency's environmental review of a project." *Id*. at 1510 (cleaned up). Before approving any CE project, the agency must prepare NEPA documentation and explain why no "extraordinary circumstances" bar the use of the CE in the project's specific context. *See Mtn. Cmtys*., 25 F.4th at 680.

Plaintiffs argue that *Seven County* does not apply; they insist their claims are "Not NEPA Claims Bound by *Seven County*." Pls.' Reply 15. Plaintiffs are wrong. *Seven County* was not handed down as a narrow ruling only on certain types of NEPA cases. Instead, *Seven County* broadly announced a "course correction . . . to bring judicial review under NEPA back in line with the statutory text and common sense." 145 S. Ct. at 1514. And *Seven County* emphasized that agencies receive "substantial deference" regarding their choices in how to comply with NEPA. *Id*. at 1513.

Plaintiffs argue that *Seven County* is inapplicable, nonetheless, because they are not challenging a project-level NEPA analysis. Pls.' Reply 16. But Plaintiffs are obviously focused on the three Fremont-Winema CE-6 projects. The operative complaint requests judicial relief including a declaration that the Forest Service's "issuance of the Decision Memoranda" for the three projects is illegal, vacatur of the project Decision Memoranda, and an injunction against project implementation. *See* ECF 60, Prayers for Relief. More than fifty (50) paragraphs in the operative complaint are devoted to

Page 19    Defendants' Reply in Support of Cross-Motion for Summary
           Judgment; *Oregon Wild, et al. v. United States Forest Service, et
           al.*, Case No. 1:22-cv-01007-MC

allegations regarding the specifics of the three projects.  *See* ECF 60 ¶¶ 122-77.

Plaintiffs rely on *Environmental Protection Information Center v. Carlson* ("*Carlson*"), 968 F.3d 985 (9th Cir. 2020), but that case does not support an exemption from *Seven County*.  *Carlson* involved a project approved by the Forest Service under a CE and it recognized that "[a]n agency can comply with NEPA in three ways. It can prepare an EIS; it can prepare an EA; or it can invoke a CE." *Id*. at 988.  Here, Plaintiffs focus on three Fremont-Winema projects where the Forest Service invoked a long-established CE that plainly allowed for commercial thinning.  For the three Fremont-Winema projects, the Forest Service complied with *Carlson*'s conception of NEPA compliance.  *Carlson* nowhere endorsed Plaintiffs' conception of a phantom NEPA significance duty to specifically study "commercial logging" when the Forest Service promulgates a timber and habitat improvement CE.  Instead, the Forest Service receives "substantial deference" in how it approaches NEPA compliance. *See Seven Cnty*., 145 S. Ct. at 1513.

Plaintiffs argue that *Seven County* "does not address NEPA's requirements at the CE rulemaking stage," Pls.' Reply 17, but fail to identify any applicable statutory NEPA requirements for rulemaking.  As the Forest

Page 20    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

Service told the public in the Federal Register, CE-6 "[does] not authorize or prohibit any action or have any effect on the environment." SUPP AR 052. Instead, the applicable NEPA regulations on "agency procedures" provided that CEs "shall be adopted only after an opportunity for public review and after review by the Council[4] for conformity with [NEPA] and these regulations." 40 C.F.R. § 1507.3(a) (1978). The Forest Service met this regulatory provision in promulgating CE-6; it provided an opportunity for public review and established the CE "in consultation with" the Council "and with [the Council's] concurrence." SUPP AR 058.

Without citing any NEPA statutory provision, Plaintiffs argue that the Forest Service thwarted NEPA's purposes of ensuring informed decisionmaking and fostering meaningful public involvement. Pls.' Reply 27. This is not correct. The Forest Service proposed CE-6 in 1991, sought public comments, and then formally published the CE in 1992. Then, in 2008, the Forest Service codified CE-6 into the Code of Federal Regulations. SUPP AR 062-64. Further, the plain text of CE-6 allows for commercial thinning and sets clear limits and conditions on the use of the CE. *Mountain Cmtys.*, 25

---

[4] The Council was the White House's Council on Environmental Quality, also known as "CEQ." *See* Defs.' Mem. 34 n.9.

Page 21     Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

F.4th at 675.  Plaintiffs disagree with the plain substance of CE-6 but fail to establish a NEPA violation in its promulgation.

Plaintiffs also complain that *Seven County* does not address "the APA's basic requirements for rulemaking in general," Pls.' Reply 17, but Plaintiffs have alleged only NEPA claims and not any freefloating APA claims. Plaintiffs, further, fail to tether their APA rulemaking arguments to any specific NEPA statutory requirement that the Forest Service supposedly missed.  "There is no right to sue for a violation of the APA in the absence of a relevant statute whose violation forms the legal basis for [the] complaint." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Review*, 959 F.2d 742, 753 (9th Cir. 1991) (cleaned up).  Because plaintiffs fail to show any violation of the NEPA statute, there is no APA violation.  *See id.*

Plaintiffs are also wrong in suggesting that the Forest Service "never" disclosed and considered the environmental effects of the three projects at issue.  *See* Pls.' Reply 17-18.  The Forest Service discussed their effects in detail, including in specialist reports.  *See* Defs.' Mem. 7-19.  The Forest Service also assessed whether there were any "extraordinary circumstances" that would push the projects out of CE-6, and Plaintiffs raised no objections with the agency's analysis or findings.  *See id.*

## 2. The Forest Service's Fremont-Winema project-level findings are relevant.

The Forest Service's environmental analysis of the three projects supports summary judgment for Defendants. According to Plaintiffs, however, "no environmental significance analysis is required to approve a project under a CE." Pls.' Reply 19. This is wrong. The Ninth Circuit recognizes that the Forest Service's "extraordinary circumstances" review of a CE project is where the agency addresses "significance" for NEPA purposes. *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 859 (9th Cir. 1999).

In *Alaska Center*, the Ninth Circuit determined that the Forest Service considered the proper factors in determining the NEPA significance of a CE project, noting that "extraordinary circumstances" are "those circumstances in which a normally excluded action may have [a] significant environmental effect." *Id.* (cleaned up). Plaintiffs are therefore incorrect that the Forest Service, in the three projects, failed to undertake "a NEPA significance analysis." Pls.' Reply 29. The Forest Service addressed the NEPA significance of each project under the appropriate CE process—and Plaintiffs raised no objections to that review.

Plaintiffs argue that "no project-specific determinations made in 2021

could affect the lawfulness of rulemaking in 1992." Pls.' Reply 18. But from the other side of their mouth, Plaintiffs argue that their input during the NEPA review for the three projects gave the Forest Service "the opportunity to rectify the [supposed] violations." *Id.* 11. It makes no sense for Plaintiffs to insist there was a baked-in uncurable problem from 1992 but at the same time insist that their project input gave the Forest Service the chance to correct the problem.

Plaintiffs complain that two of the three Fremont-Winema projects are adjacent and may have cumulative effects that are escaping NEPA review. Pls.' Reply 28. But there is no NEPA violation. Plaintiffs could have told the Forest Service during the NEPA reviews that the projects' adjacency made for "extraordinary circumstances" relating to effects. But Plaintiffs raised zero concerns.

It is misguided for Plaintiffs to try to cabin off judicial review from the facts of the three Fremont-Winema projects. Plaintiffs are challenging CE-6 as applied to the three projects—and seek to enjoin the project approvals— but the administrative record supports the Forest Service's NEPA-significance review. These lands are degraded and at high risk for wildfires without active management. The CE-6 work will improve conditions and are accompanied by protective measures for various resources.

Page 24    Defendants' Reply in Support of Cross-Motion for Summary
Judgment; *Oregon Wild, et al. v. United States Forest Service, et
al.*, Case No. 1:22-cv-01007-MC

### 3. Plaintiffs would engraft phantom procedures onto NEPA.

Plaintiffs argue that the 1992 CE-6 rulemaking did not include a "required" analysis of commercial logging on the scale of the three Fremont-Winema projects. Pls.' Reply 19-20. But Plaintiffs fail to cite any NEPA statutory provision establishing that an agency must undertake a NEPA significance analysis in promulgating a rule. Nothing in NEPA required a "commercial logging" analysis during CE-6 rulemaking. Plaintiffs fail to acknowledge that the "formulation of procedures [is] basically to be left within the discretion of the agencies," and courts should not "engraft[] their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524-25 (1978). And further, the Forest Service receives "substantial deference" in how it approaches NEPA compliance. *See Seven Cnty*., 145 S. Ct. at 1513.

As the Forest Service told the public, its publication of CE-6 was not its "final determination of what level of NEPA analysis is required for a particular proposed action." SUPP AR 052. The Forest Service rationally found—and told the public—that the promulgation of CE-6 does not "authorize or prohibit any action or have any effect on the environment." *Id*.

Page 25    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

Plaintiffs rely on an Illinois district court decision, *Heartwood, Inc., v. U.S. Forest Serv.*, 73 F. Supp. 2d 962 (N.D. Ill. 1999). Pls.' Reply 19. But that ruling involved a different CE and different circumstances—and the Seventh Circuit later clarified that the Forest Service's promulgation of a CE did not require NEPA review because it was not a federal action of the type contemplated under the NEPA statute. *Heartwood, Inc. v. U.S. Forest Serv.*, 230 F.3d 947, 954-55 (7th Cir. 2000). Because promulgating an agency procedure is not a "federal action" under NEPA that requires an EIS or EA, Plaintiffs fail to explain where the NEPA statute requires "significance" review of CE-6.

Plaintiffs argue that "no cumulative effects evaluation of commercial logging under CE-6 ever occurred." Pls.' Reply 20. But they fail to show that NEPA required that the Forest Service in promulgating CE-6 specifically evaluate "commercial logging"; CE-6 is not a commercial logging category but is instead an ecosystem-improvement category, and whether thinned trees are sold commercially or not has nothing to do with timber stand or habitat improvement. *See also Colo. Wild v. U.S. Forest Serv.*, 435 F.3d 1204 (10th Cir. 2006) (rejecting a NEPA cumulative-effects challenge to the promulgation of a CE).

It is telling that Plaintiffs would impose no duty on the Forest Service

to analyze the NEPA significance of the actual activities that constitute

timber stand/habitat improvement activities as specified and limited in CE-6.

*See* P AR 3194.  Instead, Plaintiffs would hang up the Forest Service with a

specific but phantom procedural duty to examine "commercial logging" that

does not match up with CE-6.

Plaintiffs are free to pursue their policy disagreement over commercial

thinning on National Forest lands—but that disagreement should be aired in

the political process rather than through NEPA litigation.  *Seven Cnty.*, 145

S. Ct. at 1518.

### 4. Plaintiffs fail to show any NEPA duty to examine the effects of "commercial logging" in the promulgation of CE-6.

Plaintiffs would impose a novel NEPA procedural requirement that the

Forest Service examine the significance of the effects of "commercial logging"

in promulgating CE-6.  This is inappropriate.

**First**, as explained above, promulgating a NEPA procedure has no

environmental effects, is not a federal action contemplated by NEPA, did not

require an EIS or EA, and did not authorize any on-the-ground action.   And

the Forest Service abided by the specific NEPA regulatory requirements that

did apply to promulgating the NEPA procedure.  *See infra* Argument I.D.5.

**Second**, CE-6 is not a commercial logging measure but is a timber

Page 27     Defendants' Reply in Support of Cross-Motion for Summary
Judgment; *Oregon Wild, et al. v. United States Forest Service, et
al.*, Case No. 1:22-cv-01007-MC

stand and wildlife habitat improvement measure with built-in conditions and
limits; NEPA did not require an atomized analysis of commercial logging
when the Forest Service promulgated CE-6.  Plaintiffs' demanded analysis
would measure an isolated land management action ripped out of the context
of CE-6.  Plaintiffs fail to explain why the Forest Service supposedly had to
analyze the effects of "commercial logging," but not the effects of thinning or
any of the other activities contemplated in CE-6.

**Third**, in reaching the challenged decisions for the three Fremont-
Winema projects at issue, the Forest Service accounted for the effects of the
specific thinning activities at issue.  The Forest Service addressed how the
projects would affect key resources and imposed mandatory Project Design
Criteria ("PDCs") to minimize effects.  *See*, *e.g.*, SW AR 12105-07 (addressing
botany, fisheries, wildlife, heritage, and soils effects for South Warner), BW
AR 2912-14 (addressing similar effects for Bear Wallow); BW AR 2900-02
(same for Baby Bear), SW AR 12041-85 (South Warner botany report)), SW
AR 11886-941 (South Warner terrestrial wildlife report), SW AR 03569-81
(South Warner fish and aquatic invertebrates report), SUPP AR 136-69
(South Warner PDCs and Best Management Practices), BW AR 3075-85
(Bear Wallow PDCs); SUPP AR 190-205 (Baby Bear PDCs).

It was rational, and no NEPA violation, for the Forest Service in

Page 28    Defendants' Reply in Support of Cross-Motion for Summary
Judgment; *Oregon Wild, et al. v. United States Forest Service, et
al.*, Case No. 1:22-cv-01007-MC

promulgating CE-6 to not myopically focus on the generic effects of a certain sub-action in a vacuum. Instead, the Forest Service abided by NEPA and rationally found that stand/habitat improvement activities in the three projects will overall provide a benefit to important habitat and reduce the risk of severe wildfire and insect/disease infestation.

There is a fallacy in Plaintiffs' conception of NEPA. Plaintiffs complain that the Forest Service in a CE-6 project "might claim" that a proposed "clearcut would improve habitat for meadow-associated species." Pls.' Reply 21. But a "clearcut" need not involve commercial thinning; it could involve non-commercial thinning and/or prescribed burning. And a party may object to the specific NEPA circumstances of CE-6's invocation in a particular project—for example, the use of a particular "clearcut" to improve habitat for meadow species—regardless of whether the trees cut will be sold or not. Plaintiffs cannot avoid the cornerstone fact that the Fremont-Winema project lands are in a degraded and dangerous ecological condition and that the Forest Service made an expert predictive judgment that important ecosystem resources will benefit from these restoration initiatives.

This Court should reject Plaintiffs' attempt to micromanage how the Forest Service must undertake its NEPA review. The Forest Service receives "substantial deference" in how it approaches NEPA reviews. *See Seven Cnty.*,

145 S. Ct. at 1513.  An agency "may weigh environmental consequences as the agency reasonably sees fit under its governing statute and any relevant substantive environmental laws."  *Cascadia Wildlands v. BLM*, -- F.4th --, 2025 WL 2460946, *3 (9th Cir. August 27, 2025) (citing *Seven Cnty.*).

### 5. The Forest Service met its applicable NEPA duties in promulgating CE-6.

NEPA "does not require the agency to weigh environmental consequences in any particular way."  *Seven Cnty.*, 145 S. Ct. at 1507.  Plaintiffs, nevertheless, insist that the Forest Service had to specifically find in promulgating CE-6 that "commercial logging" would have no significant effects.  Pls.' Reply 22.  They are wrong.

The Forest Service rationally followed NEPA procedures in promulgating CE-6.  In line with NEPA regulations,[5] the agency consulted with the Council before publishing the CE for public comment (in 1991) and adopted CE-6 only after an opportunity for public review and after review by the Council for conformity with NEPA.  40 C.F.R. § 1507.3(a) (1978).  The Council concurred that the CE conformed with NEPA.  *See* SUPP AR 051.

---

[5] Meaning the NEPA regulations in effect at the time; the Council/CEQ NEPA regulations were formally rescinded in early 2025.  *See* Defs.' Mem. n.9.

Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

The Forest Service was also consistent with 40 C.F.R. § 1508.4 (1978),[6] to the extent it applied.

**First**, as the Forest Service announced in a Federal Register publication, its promulgation of CE-6 was not its "final determination of what level of NEPA analysis is required for a particular proposed action."  SUPP AR 052.  As the Forest Service found—and told the public—the promulgation of CE-6 does not "authorize or prohibit any action or have any effect on the environment."  *Id.*

**Second**, in reaching its decision to promulgate CE-6, the Forest Service explained that this CE was based on "[e]xperience in applying agency NEPA procedures and project monitoring" and found it "will have little potential for soil movement, loss of soil productivity, water and air degradation or impact on sensitive resource values."  SUPP AR 009, 010. Then, in publishing CE-6, the Forest Service reiterated that stand/wildlife habitat improvement activities did not have significant environmental effects, *see* P AR 3168, and the agency provided for extraordinary circumstances-review to cover when "a normally excluded action may have a significant environmental effect."  *See* P AR 3168-69, 3193.  In promulgating

---

[6] This regulation was rescinded in 2025, along with the other Council/CEQ NEPA regulations.

Page 31    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

CE-6, the Forest Service provided some quantified or detailed information to support that CE-6 activities would have no significant cumulative effects on the environment. P AR 3168, SUPP AR 009, 010. As the agency found, there is "little potential" in the first place for CE activities to reduce soil productivity, degrade water and air, and impact sensitive resource values; significant cumulative effects were therefore not a concern.

Plaintiffs continue to rely heavily on *Sierra Club v. Bosworth*, 510 F.3d 1016 (9th Cir. 2007). *See* Pls.' Reply 22-24. But that case remains distinguishable. In the instant case, as the Forest Service found in the Federal Register, CE-6 was not its "final determination of what level of NEPA analysis is required for a particular proposed action." SUPP AR 052. The promulgation of CE-6 did not "authorize or prohibit any action or have any effect on the environment." *Id.* In the circumstances of the instant case, *Bosworth* is further unpersuasive because nothing in NEPA's NEPA statutory text required a significance analysis for the promulgation of CE-6; CE-6 required no review in an EIS or EA. As *Seven County* emphasized, "[a] course correction . . . is appropriate to bring judicial review under NEPA back in line with the statutory text and common sense." 145 S. Ct. at 1514. And rather than relying on the NEPA statute, *Bosworth* relied heavily on now-rescinded CEQ/Council regulations. *See*, *e.g.*, 510 F.3d at 1027-28

Page 32    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

Plaintiffs argue that *Bosworth* set a NEPA requirement for "specific, detailed analysis and findings," but *Bosworth* is distinguishable considering *Seven County*. As *Seven County* makes clear, an agency has great discretion in how it undertakes a NEPA effects finding. *See* Defs.' Mem. 31-32, 37-38; *Cascadia Wildlands*, 2025 WL 2460946, *23 (citing *Seven Cnty*.). Nor did *Bosworth* recognize the deference that is due to an agency when it makes predictive judgments and decides what is and what is not significant under NEPA. *See id.* Plaintiffs take great pains to avoid *Seven County* and the Ninth Circuit's recent ruling in *Cascadia Wildlands* while simultaneously relying on older/out-of-circuit law. *See* Pls.' Reply 25.

Plaintiffs rely on *California Wilderness Coalition v. U.S. Department of Energy*, 631 F.3d 1072 (9th Cir. 2011). Pls.' Reply 25. But that case involved a "major Federal action" under the NEPA statute and the Ninth Circuit determined that an EIS or EA was required. *Id.* at 1107. Here, in sharp contrast, the promulgation of CE-6 was not a major federal action under NEPA itself, and the promulgation of the CE did not require either an EIS or EA. *See Bosworth*, 510 F.3d at 1025.

Plaintiffs continue to argue that acreage limits in other CEs are relevant in assessing CE-6. But it is the law of this case—per the Ninth

Circuit—that "the existence of specific size and acreage limitations in other CEs" is irrelevant in assessing the language of CE-6.  ECF 52 at pp. 4-5.

For all these reasons, this Court should grant Defendants summary judgment against Plaintiffs' second claim.

## II.    This Court should grant summary judgment against Plaintiffs' third claim.

### A. Plaintiff GO Alliance fails to meet its burden to establish its standing.

As Defendants established, summary judgment is warranted against the third claim.  *See* Defs.' Mem. 49-52.  This is because Plaintiffs Oregon Wild and WildEarth Guardians are time-barred under *Corner Post* in bringing the third claim, *see supra* Argument I.A., and Plaintiff GO Alliance lacks standing to bring the third claim.

Plaintiff GO Alliance bears the burden of establishing its standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  But the GO Alliance lacks standing because it has not demonstrated an injury in fact.  *Summers v. Earth Island Institute,* 555 U.S. 488 (2009), established that to prove an injury in fact, an environmental plaintiff must: (1) identify a "particular site" affected by the challenged action that it intends to visit; and (2) provide evidence of a "specific and concrete" plan to visit the site.  *Id*. at 495.  An environmental plaintiff bears the burden of showing the "likelihood" that it

Page 34    Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

will visit the site. *Id*.

Under *Summers* and *Lujan*, Plaintiff GO Alliance fails to establish the necessary injury in fact to establish standing for the third claim. GO Alliance has now provided <u>two</u> standing declarations from its executive Ralph Bloemers. *See* ECF 68-1, 77. But Mr. Bloemers does not testify to *any* prior use of the Bear Wallow or Baby Bear project areas, and does not testify to *any* concrete or specific plans to visit the Bear Wallow or Baby Bear areas. *See id*. Plaintiff GO Alliance fails to establish its standing regarding those CE-6 projects. To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Plaintiff's lack of any plans to visit either the challenged Bear Wallow or Baby Bear project areas defeats GO Alliance's standing. *See Summers*, 555 U.S. at 495. Mr. Bloemers states that he has plans to visit the Sun Pass and Bootleg fire areas, but neither area involves any challenged CE-6 decision.

Nor has GO Alliance shown the necessary injury in fact relating to the South Warner project. Mr. Bloemers states generally that he plans to return to the South Warner area but states only that this may occur "either later this year or next year." ECF 77 ¶¶ 4, 13. This is insufficient to establish standing. In *Lujan*, the Supreme Court held that the absence of credible

Page 35      Defendants' Reply in Support of Cross-Motion for Summary
             Judgment; *Oregon Wild, et al. v. United States Forest Service, et
             al.*, Case No. 1:22-cv-01007-MC

specific plans to visit an affected area defeated a party's standing.  504 U.S. at 564.  Mere "some day intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of the actual or imminent injury that our cases require." *Id.* (cleaned up).  The GO Alliance's vague "some day" plans do not establish any standing for the third claim.

**B. Summary judgment is otherwise appropriate against the third claim.**

Further, for the same reasons that summary judgment is otherwise appropriate against the second claim, this Court should grant Defendants summary judgment against the third claim.  *See supra* Argument I.A.; Defs.' Mem. 51-52.

Plaintiffs rely on *Gifford Pinchot Task Force v. U.S. FWS*, 378 F.3d 1059 (9th Cir. 2004), Pls.' Reply 29-30.  But that case did not address NEPA procedural claims and addressed substantive claims under the ESA.  It has no relation here.  As *Seven County* established, "NEPA imposes no substantive environmental obligations or restrictions . . . [and] does not require the agency to weigh environmental consequences in any particular way."  145 S. Ct. at 1507.

Defendants' Reply in Support of Cross-Motion for Summary Judgment; *Oregon Wild, et al. v. United States Forest Service, et al.*, Case No. 1:22-cv-01007-MC

Plaintiffs disagree that CE-6's prohibition of more than one mile of new road construction in a project is not an "adequate bulwark" against significant NEPA effects. Pls.' Reply 30. But Plaintiffs fail to explain why they never came forward decades ago with this concern; CE-6 is plain on its face that it limits road construction to one mile or less in all projects.

For their supposedly "facial" challenge to CE-6, it is also notable that Plaintiffs rely on the administrative record from the three later Fremont-Winema projects. *See id*. This shows that Plaintiffs had the opportunity to air concerns during the project NEPA process regarding road construction. Plaintiffs could have raised the concern that road construction in the projects presented extraordinary circumstances that implicated NEPA significance and required preparation of an EIS or EA. But Plaintiffs raised no such concern and the project record supports the Forest Service's NEPA decision.

Plaintiffs are also wrong that CE-6 "authorizes all" projects without "sufficient parameters to ensure against significant effects." Pls.' Reply 31. First, CE-6 does not authorize any projects; the Forest Service must instead prepare project-by-project NEPA analyses. Second, in any CE-6 project, the Forest Service must address whether any "extraordinary circumstances" would present NEPA significance and preclude the use of the CE. Plaintiffs chose not to raise any extraordinary circumstances concerns in the three

Page 37    Defendants' Reply in Support of Cross-Motion for Summary
           Judgment; *Oregon Wild, et al. v. United States Forest Service, et
           al.*, Case No. 1:22-cv-01007-MC

Fremont-Winema projects; that hardly renders CE-6 itself arbitrary and capricious under NEPA.

## CONCLUSION AND REMEDY

For the reasons above, this Court should grant Defendants summary judgment against Plaintiffs' claims and deny Plaintiffs' motion for summary judgment.

However, if this Court rules in any respect for Plaintiffs, it should order equity proceedings regarding an appropriate remedy. Vacatur is an equitable remedy, just like injunctive relief, and the Supreme Court has emphasized that a party must demonstrate "equitable entitlement to the extraordinary remedy of a vacatur." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). But Plaintiffs have not filed any motions for equitable relief in this case. This Court should decline Plaintiffs' premature request for vacatur without providing Defendants a future opportunity to present evidence, at the appropriate juncture, relevant to the equities. *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1080–81 (9th Cir. 2010) ("Our courts have long held that relief for a NEPA violation is subject to equity principles."). Any potential future remedy proceedings would be best informed by, and flow from, this Court's factual findings and legal conclusions on the NEPA claims.

Dated this 26th day of September 2025.

> Respectfully submitted,
>
> SCOTT E. BRADFORD
> United States Attorney
> District of Oregon
>
> */s/ Sean E. Martin*
> SEAN E. MARTIN
> Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

The preceding memorandum complies with the applicable word-count limit under LR 7-2(b) because it comprises 8,052 words, based on the word-count of the word processing system used to prepare the memorandum. This word count includes headings, footnotes, and quotations, but excludes the caption, table of contents, table of authorities, cross-motion, signature block, and any certificates of counsel.

Dated this 26th day of September 2025.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney
District of Oregon

/s/ Sean E. Martin
SEAN E. MARTIN
Assistant U.S. Attorney