Oliver J. H. Stiefel, OSB # 135436
(503) 227-2212 │ oliver@crag.org
Meriel L. Darzen, OSB # 113645
(503) 525-2725 │ meriel@crag.org
CRAG LAW CENTER
3141 E. Burnside St.
Portland, Oregon 97214
Fax: (503) 296-5454

Erin E. Hogan-Freemole, OSB # 212850
(971) 417-6851 │ ehoganfreemole@wildearthguardians.org
WILDEARTH GUARDIANS
213 SW Ash Street, Suite 202
Portland, OR 97204

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **OREGON WILD**, an Oregon nonprofit corporation; **WILDEARTH GUARDIANS**, a New Mexico nonprofit corporation; and **GO Alliance**, an Oregon nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES FOREST SERVICE**, **DONALD ASHCRAFT**, in his official capacity as Lakeview Ranger District Ranger; **JEANNETTE WILSON**, in her official capacity as Silver Lake Ranger District Ranger; **TOM SHULTZ**, in his official capacity as Chief of the U.S. Forest Service; and **BROOKE ROLLINS**, in her official capacity as Secretary of Agriculture,<br><br>Defendants. | Case No. 1:22-cv-01007<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60 AND/OR FED. R. CIV. P. 59(e)** |

Oregon Wild, WildEarth Guardians, and GO Alliance ("Plaintiffs") respectfully submit their response to Defendants' Motion for Relief Under FED. R. CIV. P. 60 and/or FED. R. CIV. P. 59(e) ("59/60 Mot."), ECF No. 92.

This case has gone on for nearly four years. Defendants have had numerous opportunities to provide this Court with argument and evidence; they cannot legitimately contend that the matter was not fully and fairly litigated. But Defendants nevertheless seek to reopen the case and relitigate issues they either already addressed or strategically chose not to contest. While Defendants claim to identify "mistake" or "clear error" in the Order, ECF No. 88, and Judgment, ECF No. 89, their principal arguments express mere disagreement with this Court's ruling. *See* 59/60 Mot. at 1. Rules 59 and 60 are not the appropriate vehicle for airing Defendants' displeasure.

Defendants offer three basic arguments: In Part I, they contest the scope of relief, asserting that this Court's remedy went beyond Plaintiffs' requested relief; in Part II, Defendants argue first that this Court failed to account for the disruptive consequences of vacatur, and second, that the Order and Judgment's temporal scope requires clarification. To the extent that Defendants seek clarification of the scope and effect of this Court's Order and Judgment, Plaintiffs take no position. However, Defendants cast their net far too broadly, and ultimately request that this Court "remand without vacatur or undertake remedy proceedings." 59/60 Mot. at 8. This constitutes an improper attempt to relitigate issues on which this Court has already ruled. Because Defendants have "brought up nothing new—except [their] displeasure," *Garcia v. Biter*, 195 F. Supp. 3d 1131, 1132–33 (E.D. Cal. 2016) (internal citation omitted), Plaintiffs oppose this too-little, too-late demand for a different outcome.

///

///

Resp. to 59/60 Mot.—1

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2212*

**LEGAL STANDARD**

Amendment pursuant to Rules 59(e) or 60(b) constitutes "an extraordinary remedy, to be used sparingly[.]" *Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003). A motion for reconsideration under Rule 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc) (internal quotations omitted); *see also Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Similarly, Rule 60(b) provides for reconsideration only upon a showing of "mistake . . . newly discovered evidence . . . [or] 'extraordinary circumstances' which would justify relief." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (internal quotation omitted). Mere disagreement with an adverse ruling does not constitute such extraordinary circumstances. *See Cranford v. Palos*, No. 1:14-cv-00242-SKO (PC), 2014 U.S. Dist. LEXIS 60775, at *2–3 (E.D. Cal. Apr. 29, 2014) (citations omitted).

A motion for reconsideration may not be used "to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945 (internal citation omitted); *see also Alden v. AECOM Tech. Corp.*, No. 21-16002, 2023 WL 2552619, at *1 (9th Cir. Mar. 17, 2023). Nor is it "an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold*, U.S.A., 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005); *see also United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D. Ariz. 1998) ("A motion for reconsideration should not be used to ask the court to rethink what the court had already thought through[.]").

The bar for reconsideration is particularly high where there is no new evidence or change in controlling law, in which case amendment is appropriate only in the event of "clear error or

Resp. to 59/60 Mot.—2

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2212*

manifest injustice." *S-Tronix v. Submedia, LLC*, No. CV 08-272-PK, 2009 WL 10731034, at *1 (D. Or. Apr. 14, 2009); *see also United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). "For a decision to be considered clearly erroneous it must be more than just maybe or probably wrong; it must be dead wrong. A movant must demonstrate a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Garcia*, 195 F. Supp. 3d at 1133 (internal quotations omitted).

## ARGUMENT

Relying solely on the "mistake" and "clear error" prongs of the test, Defendants raise a variety of grievances with this Court's decision; none of them constitute proper grounds for reconsideration. They put forth arguments that could reasonably have been made earlier. They attempt to relitigate issues this Court already decided, but cite no new evidence or changes in controlling law. Defendants' failure to make their case during merits briefing does not entitle them to a second bite at the apple.

**I.    Scope of Vacatur**

Defendants contest both the scope and the meaning of this Court's order of vacatur. To the extent that Defendants seek clarification of this Court's Order and Judgment, Plaintiffs take no position. However, Defendants do not carry their burden for reconsideration under Rule 59 or 60.

**a.    The APA Authorizes Full Vacatur.**

In Part I of their motion, Defendants argue, "to the extent this Court vacated CE-6 in its entirety, that is mistake or clear error warranting relief under Fed. R. Civ. P. 60 or 59(e)." 59/60 Mot. at 7. If this Court did not intend to vacate CE-6 in its entirety, Plaintiffs take no position on clarification of the scope of this Court's Order and Judgment as to whether vacatur applies only to

commercial logging operations. As to whether vacatur of CE-6 in its entirety represents mistake or clear error, that is wrong as a matter of law.

Defendants assert that vacatur is inappropriate because "this action challenged CE-6 only in the context of commercial thinning." *Id.* at 7. But the purported asymmetry between Plaintiffs' requested relief and this Court's ordered remedy is overstated and not a basis for reconsideration under Rules 59 or 60. Indeed, "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." FED. R. CIV. P. 54(c). Because CE-6 was unlawfully promulgated—as Plaintiffs plead—Plaintiffs were entitled to, and this Court properly granted, vacatur of the rule in its entirety. ECF No. 60 ¶ 213 ("The adoption of CE-6 was therefore arbitrary, capricious, an abuse of discretion, in excess of statutory authority, not in accordance with and without observance of procedure required by law. 5 U.S.C. § 706(2)); *id.* at Prayer for Relief B ("Declare that, because commercial logging operations like those authorized by the South Warner, Bear Wallow, and Baby Bear Projects are permitted under CE-6, CE-6 is *ultra vires*, violates NEPA and its implementing regulations, and the Forest Service acted arbitrarily, capriciously, and in excess of its authority in promulgating CE-6."); *id.* at Prayer for Relief H ("Grant such additional relief as the Court deems just and proper.").[1]

The APA stipulates that a reviewing court shall "hold unlawful and **set aside**" agency action found to be arbitrary, capricious, contrary to law, or taken without observance of procedure required by law. 5 U.S.C. § 706(2) (emphasis added). Therefore, as this Court explained, the normal remedy under the APA is vacatur, not "fashion[ing] a valid regulation from the remnants

---

[1] As well, Defendants' untimely and oblique attack on Plaintiffs' standing is misguided. 59/60 Mot. at 6. There is no requirement for a plaintiff to prove that "every application of the regulation[] will harm them to establish injury-in-fact." *California v. Bernhardt*, 460 F. Supp. 3d 875, 887 (N.D. Cal 2020).

Resp. to 59/60 Mot.—4

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2212*

of the old rule." ECF No. 88 at 26–27 (quoting *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021)). It was not "mistake or clear error" to take this conventional approach and grant the presumptive remedy for APA violations. *Contra* 59/60 Mot. at 6–7; *see All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018) (discussing "presumption of vacatur"); *E. Bay Sanctuary Covenant*, 993 F.3d at 681 (discussing "broad equitable relief available in APA challenges").

As the Ninth Circuit has held, a categorical exclusion promulgated in the absence of required findings renders that CE unlawful in all of its applications. *Sierra Club v. Bosworth*, 510 F.3d 1016, 1023–24 (9th Cir. 2007). In the context of the relevant 1992 rulemaking, *Heartwood v. U.S. Forest Service* again proves illustrative. *See* 73 F. Supp. 2d 962 (S.D. Ill. 1999), *aff'd*, 230 F.3d 947 (7th Cir. 2000). There, the Forest Service had adopted an interim rule permitting limited commercial logging, and environmental groups requested a much lower cap for the final CE. *See id.* at 975. Instead, the Forest Service significantly increased the CE's scope without any supporting analysis, "a classic example of an arbitrary decision." *Id.* Rather than endorsing one of the CE's more limited versions, however, the court vacated the rule in its entirety. *Id.* at 975–77. The CE's deficiency stemmed from its adoption, not its possible applications, even if some of those applications were unobjectionable. *Id.* For the same reasons, vacating CE-6 in its entirety is consistent with the APA and the law of vacatur. *Contra* 59/60 Mot. at 6–7.

Defendants are also factually wrong as to Plaintiffs' position on the impacts of noncommercial activities. At no point did Plaintiffs "agree[] that adverse environmental effects 'do not typically result from non-commercial operations.'" 59/60 Mot. at 4 (selectively quoting ECF No. 68). Instead, Plaintiffs identified several specific impacts associated solely or primarily with commercial logging (*e.g.*, soil degradation from skid trails and sedimentation from logging

truck traffic). *See* ECF No. 68 at 5–6; *see also* ECF No. 74-1 at 6. Commercial logging thus has more severe impacts, but that is not to say that noncommercial thinning is categorically insignificant—particularly on an unlimited scale. And most importantly, as this Court pointed out, the record "does not show the Forest Service considered the impact of thinning at any scale, commercial or otherwise[.]" ECF No. 88 at 24. It was therefore entirely within this Court's equitable discretion to vacate CE-6 in full. *See id.* at 25 (citing *Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010); *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992–94 (9th Cir. 2012) (per curiam)).

   b.  **The Temporal Scope of Vacatur.**

In their second argument under Part II of their motion, Defendants complain that the temporal scope of this Court's order is unclear. *See* ECF Nos. 92 at 10; 93 ¶ 14. Plaintiffs disagree, but they take no position on Defendants' request for clarification providing further guidance.[2]

This Court clearly made its vacatur ruling apply prospectively:

> In exercising its equitable powers to set aside CE-6, the Court nevertheless recognizes and balances the fact that CE-6 was originally promulgated in 1992, and that the Projects in this case may have active contracts for sale of thinned timber. Accordingly, the Court sets aside CE-6 as to **all future actions that are not final agency actions** as of the date of this Order.

ECF No. 88 at 27 (emphasis added). In administrative law, "final agency action" has a defined meaning: It is an agency action that (1) marks the consummation of the agency's decisionmaking process, and (2) is one from which legal consequences will flow. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *see also* 5 U.S.C. § 551(13) ("'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to

---

[2] However, this Court has already considered and decided the relevant issues; there is no need for further proceedings or extra-record evidence, and Defendants have provided no grounds for this Court to revisit its conclusions.

act[.]"). Thus, it is clear that this Court's remedy order applies to any agency action which is not yet final; final agency actions as of January 13, 2026, however, are permitted to proceed.[3]

## II. Need for Vacatur

In Part II of their motion, Defendants also attempt to relitigate and expand on their position that the matter should be remanded without vacatur. They lodge one procedural and one substantive critique, both of which lack merit.

### a. Defendants Already Had the Opportunity to Raise Their Equities Arguments.

As an initial matter, Defendants again request further remedy proceedings. But Defendants' suggestion that they were denied "the opportunity to fully brief the issue" of remedy rings false for several related reasons. 59/60 Mot. at 11.

First, Defendants already had their opportunity to discuss remedy, just as Plaintiffs did, and any arguments they might now make "could reasonably have been raised earlier." *Carroll*, 342 F.3d at 945; *see also Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1218 (9th Cir. 2020); ECF Nos. 72 at 52–54; 76 at 31–35; 83 at 38. They cannot be raised on a motion for reconsideration. *See Carroll*, 342 F.3d at 945 ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time[.]"); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (same). Plaintiffs flagged this very issue in their own briefing, where they explained at length why vacatur is appropriate. *See* ECF No. 76 at 32 (noting that "Defendants largely punt on the question of remedy"). Tellingly, amicus curiae AFRC did take the opportunity to respond on the question of vacatur, and specifically argued for remand without vacatur. ECF No. 74-1 at 21–24.

---

[3] Illustratively, this Court's order does not vacate the Cuddy Mountain project, which was a final agency action as of November, 2019, and involved commercial thinning under CE-6. *See Mt. Cmtys. for Fire Safety v. Elliot*, 25 F.4th 667, 674 (9th Cir. 2022).

But rather than respond to Plaintiffs' arguments, Defendants doubled down on their strategic choice to not fully brief the issue. *See* ECF No. 83 at 38; *see also* ECF Nos. 68 at 33–35; 72 at 53–54; 76 at 31–35. This Court could not have committed "clear error" by declining to consider arguments Defendants declined to make. *Contra* ECF No. 92 at 8–11; *cf. Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (courts should not "manufacture arguments" for parties). It should not now indulge Defendants' demand for a "second bite at the apple." *Campion v. Old Repub. Home Protection Co., Inc.*, No. 09–CV–00748–JMA(NLS), 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011); *see also Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 891 (9th Cir. 2000) (rejecting new argument that movant had "numerous opportunities" to raise earlier).

Moreover, while they devoted little of their briefing space to the matter, Defendants did already file a declaration on the purportedly disruptive consequences of vacatur. *See* ECF No. 73. The Kinder Declaration discusses the Forest Service's use of CE-6, noting that it "has been used more than 1,500 times in the last ten years." *Id.* at ¶ 2. The declaration asserts that "[CE-6] is key to attaining the objectives set forth in Executive Order 14225, Immediate Expansion of American Timber Production (March 1, 2025)." *Id.* It states that other agencies have also adopted CE-6 and argues that "[l]imiting the applicability of this CE now may adversely affect [Department of Homeland Security] and [National Park Service] intentions on use of the CE as currently written." *Id.* at ¶ 3. Defendants already had—and indeed, already used—their opportunity to address the equities, even beyond their briefs.

Defendants now recycle and elaborate upon their previous arguments by submitting another declaration from a Forest Service official. ECF No. 93 ("White Decl."); *see also, e.g., id.* at ¶¶ 8, 11–13 (discussing recent use of CE-6 and adoption by other agencies and noting that other

CEs are more limited).[4] But there is nothing in the new White Declaration that Defendants could not have raised previously, nor are Defendants entitled to give another, "more robust presentation" of their position. 59/60 Mot. at 11; *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1218 (9th Cir. 2020) (declining to reconsider decision based on evidence moving party could have raised earlier).

Defendants fail to acknowledge that they, and this Court, also had the benefit of AFRC's remedy briefing. *See* ECF No. 74-1 at 15–18. AFRC argued that "any legal errors" in CE-6's promulgation could be "remedied on remand" because "the Forest Service would need to merely provide additional explanations for why commercial thinning is permissible under CE-6." *Id.* at 16–17. It asserted that vacatur would have disruptive consequences and discussed the balance of equities. *Id.* at 17–18. After due consideration, this Court explicitly rejected each of these arguments. *See* ECF No. 88 at 24–27; *see also* ECF No. 76 at 33–35 (refuting AFRC's remedy arguments); *infra* at pp. 10–11. If Defendants considered AFRC's remedy discussion insufficient, the proper place for them to elaborate was in their response brief of September 26, 2025, *see* ECF No. 83 at 38—not a motion for reconsideration.

Finally, Defendants already apprised this Court of their desire for further proceedings, which this Court already determined were unnecessary. *See* ECF Nos. 72 at 52–54; 83 at 38.[5] The

---

[4] The White Declaration lacks a single citation for its pertinent allegations. Defendants may seek to remedy this deficiency by submitting yet another declaration, but "[l]itigation is a not a shell game, in which a movant is permitted to make general assertions in a motion, leaving its opponent to guess at its grounds, only then to supply content in a reply brief." *Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, No. 15-01582 (APM), 2015 WL 9269401, at *3 (D.D.C. Dec. 8, 2015) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Defendants' failure to support their position in their summary judgment papers is fatal to their untimely efforts.

[5] Although, in negotiating a Joint Proposed Case Management Schedule, Defendants never requested separate remedy proceedings. *See* ECF No. 61 (requesting a four-brief summary judgment schedule and not requesting any further remedy proceedings); *see also Thomsen v.*

fact that Defendants are "disappointed with the Court's decision and seek[] one additional chance to sway the Court" is not a basis for amending the decision. *Garcia*, 195 F. Supp 3d at 1133 (quoting *Kilgore v. Colvin*, No. 2:12-CV-1792 CKD, 2013 WL 5425313, at *1 (E.D. Cal. Sept. 27, 2013)).

### b. This Court Properly Vacated CE-6.

Substantively, Defendants insist "[t]his Court did not account for the disruptive consequences of vacatur[.]" 59/60 Mot. at 8. This is simply not true. This Court properly applied the equity test by weighing the disruptive consequences of vacatur against the harms of retaining an invalid agency rule. *See Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992–94 (9th Cir. 2012). It concluded, based on this balancing test and its previous legal conclusions, that vacatur was the only appropriate remedy; Defendants' belated remedy arguments are simply a disagreement with this Court's analysis.

Contrary to Defendants' assertions, this Court amply explained why vacatur is appropriate here. *See* ECF No. 88 at 24–27. Its ruling directly addressed Defendants' current arguments regarding the scope of remedy, the consequences of vacatur, and the severity of Defendants' legal violations. *Id.* Defendants clearly dislike this Court's conclusions, but that does not entitle them "to re-litigate the same issues and arguments upon which the court already has ruled." *Brown*, 378 F. Supp. 2d at 1288; *see also S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (noting that court's ruling directly addressed issue litigant sought to raise).

Defendants argue that vacatur will disrupt both future CE-6 projects and those "already past the NEPA decision point," which they claim this Court failed to consider. *Id.* at 9–10. But the

---

*NaphCare, Inc.*, No. 3:19-cv-00969-AC, 2021 WL 67754438, at *2 (D. Or. Nov. 5, 2021) (the federal rules "do not contemplate implicit schedule modifications where neither party has requested one.").

Resp. to 59/60 Mot.—10

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2212*

Court specifically "recognize[d] and balance[d] the fact CE-6 was originally promulgated in 1992, and that the Projects in this case may have active contracts for sale of thinned timber." ECF No. 88 at 27. This Court therefore set aside CE-6 only "as to all future Forest Service actions that are not final agency actions as of the date of [its] Order," and exempted existing contracts from its vacatur of the Projects. *Id.*[6] This remedy appropriately balances potential harms to the agency and its contractors against the harm of "allow[ing] the Forest Service to continue to approve commercial thinning at any scale as a part of qualifying projects by way of a CE that was illegally promulgated." *Id.* at 25.

This Court also expressly considered and disposed of Defendants' broader claims regarding their "important efforts to efficiently address forests at risk for wildfire or insect/disease infestation and wildlife habitats in need of improvement." ECF No. 92 at 9; *see also* ECF No. 74-1 at 18 ("[V]acatur of commercial thinning under CE-6 . . . will prevent the Forest Service from relying on CE-6 to implement much-needed timber stand health or wildlife habitat improvement projects."); ECF No. 93 at ¶¶ 10–13. As this Court explained, "setting aside CE-6 does not leave the Forest Service without alternatives to address wildfire risk; it may rely on other methods approved through other CEs, or it may prepare an EA or EIS to approve the same kind of commercial thinning once more." ECF No. 88 at 26; *cf. Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) (explaining that remand without vacatur is appropriate only in limited circumstances, such as to prevent "extinction of an animal species").

---

[6] Confusingly, Defendants have also complained about Plaintiffs' decision **not** to disrupt ongoing implementation, suggesting that vacatur is premature because Plaintiffs did not move to enjoin existing contracts. *See* ECF No. 83 at 38. This does not mean that Plaintiffs failed to demonstrate entitlement to their requested remedy. *See* ECF Nos. 68 at 34–35; 76 at 32–35. Rather, Plaintiffs sought to minimize disruptions and avoid further unnecessary motions practice. Both Plaintiffs and this Court have already fully considered the consequences of vacatur.

Resp. to 59/60 Mot.—11

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2212*

Defendants suggest that none of these options are workable because "[w]hile other CE categories exist, only three directly address wildfire risk, and each has significant [acreage and other] limitations." ECF No. 93 at ¶ 13.[7] But the fact that CE-6 (and only CE-6) allows agencies to conduct projects on a **limitless** scale without full analysis is one of the very reasons this Court vacated it. *See* ECF No. 88 at 23–26. Defendants' objections are, once again, merely an attempt to relitigate issues this Court has already decided.

Moreover, the Forest Service has already adapted by "prepar[ing] an EA . . . to approve the same kind of commercial thinning once more." *Id.* at 26. For example, in 2024 the Klamath National Forest proposed the 60,776-acre South End Project under CE-6. *See* Fourth Declaration of Oliver J. H. Stiefel ("4th Stiefel Decl."), Ex. 1 at 1.[8] On January 26, 2026, the Klamath National Forest again requested public comment on the South End Project—which it now stated would be approved under an EA. 4th Stiefel Decl., Ex. 2 at 2. The agency also noted that "the responsible official plans to approve an Emergency Action Determination, which waives the comment period and administrative review process under 36 CFR 218." *Id.* As predicted, the Forest Service has swiftly pivoted to its other management tools.

Finally, this Court has amply explained why remand without vacatur is inappropriate here. *See* ECF 88 at 25–27. It observed that "[t]he Forest Service's error in promulgating CE-6 is serious enough to justify vacatur" and explained the environmentally harmful consequences of leaving

---

[7] Defendants are not limited to the three CEs that directly address wildfire—notably, CE-6 itself says nothing about wildfire risk, and there are several other CEs that authorize the same activities. *See, e.g.*, 7 C.F.R. §§ 1b.4(d)(2), (34)–(37), (47). And, of course, the agencies may always prepare an EA or EIS—not every project can or should be categorically excluded from full environmental review.

[8] *See* U.S. Forest Serv., Klamath National Forest & Butte Valley National Grassland, *South End Project Page*, https://www.fs.usda.gov/r05/klamath/projects/56560 (last updated Sept. 30, 2025).

CE-6 in place. *Id.* at 25–26. The Court specifically found it "unlikely the Forest Service could adopt the same rule on remand," given the total absence of record support for the agency's position. *Id.* Setting aside CE-6 is therefore not "an interim change that may itself be changed." *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993); *cf. Cal. Cmtys. Against Toxics*, 688 F.3d at 993 (noting that agency had already offered "new reasoning to support its final rule"). Defendants are clearly dissatisfied with this Court's conclusions, but "it is not appropriate for a party to request reconsideration merely to force the court to think about [an] issue again in the hope that [it] will come out the other way the second time." *In re Galena Biopharma, Inc. Derivative Litigation*, 2014 WL 5494890 (D. Or. Oct. 30, 2014) (Simon, J.) (internal quotation and citation omitted).

In sum, Defendants are attempting to relitigate issues that this Court has already fully analyzed and decided. That Defendants failed to adequately brief the question of vacatur does not mean this Court failed to properly consider it, or that they are entitled to a second bite at the apple. And, to the extent that Defendants may wish to raise new and different arguments, it is too late: Defendants cannot point to clear error on the part of this Court in failing to address arguments Defendants failed to make. *See 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). They have shown no legal basis for reconsideration under Rules 59 or 60.

## CONCLUSION

This case is now entering its fourth year. Both sides have submitted extensive briefing. The longer resolution is delayed, the more harmful this uncertainty itself becomes to the Parties, amicus, federal contractors, policy makers, and the public. The best way for this Court to minimize disruption is to reject Defendants' attempts to relitigate the matter. Plaintiffs therefore respectfully request that this Court deny Defendants' motion, subject to possible clarifications as noted above.

Resp. to 59/60 Mot.—13

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2212*

DATED this 20th day of February, 2026.

Respectfully submitted,

s/ Oliver J. H. Stiefel
Oliver J. H. Stiefel, OSB # 135436
(503) 227-2212 | oliver@crag.org
Meriel L. Darzen, OSB # 113645
(503) 525-2725 | meriel@crag.org
CRAG LAW CENTER
3141 E. Burnside St.
Portland, Oregon 97214
Fax: (503) 296-5454

Erin Hogan-Freemole
(971) 417-6851 | ehoganfreemole@wildearthguardians.org
WILDEARTH GUARDIANS
213 SW Ash Street, Suite 202
Portland, OR 97204

*Attorneys for Plaintiffs*